**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **REBECCA NGUYEN, TAMICA BREWSTER,** and **KYLE STRICKENBERGER**, on behalf of themselves and all others similarly situated, | Civil Action No.   2:22-cv-1743 |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| **EDUCATIONAL COMPUTER SYSTEMS, INC.,** *d/b/a* **HEARTLAND ECSI**, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Rebecca Nguyen, Tamica Brewster, and Kyle Strickenberger, individually and on behalf of all others similarly situated, bring this class action against Defendant Educational Computer Systems, Inc. ("ECSI"), alleging (1) violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788.17, and the laws of seven other states whose debt-collection laws are materially uniform; (2) violations of California's Student Borrower Bill of Rights, Cal. Civ. Code §§ 1788.100 *et seq.*, Illinois's Student Loan Servicing Rights Act, 110 Ill. Comp. Stat. 992/1-1 *et seq.*, and the laws of nine other states whose student loan borrower bills of rights are materially uniform; (3) violations of the implied covenant of good faith and fair dealing embedded in every contract; (4) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (5) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*

As set forth in Paragraphs 9 through 11, this Court has diversity jurisdiction over Plaintiffs' claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

## NATURE OF THE ACTION

1.      ECSI, a servicer of student loans, routinely violates state debt collection and consumer protection laws and breaches the implied covenant of good faith and fair dealing in borrowers' standardized student loan agreements by unlawfully and deceptively charging borrowers "convenience fees" or "processing fees" (collectively, "Pay-to-Pay Fees") each time a consumer borrower makes a student loan payment online or over the phone.

2.      ECSI services federal Perkins loans, which are offered by educational institutions and funded in whole or in part by federal government dollars. These loans are governed by a standardized federal Master Promissory Note ("MPN"). The MPNs do not expressly authorize Pay-to-Pay Fees.

3.      As a loan servicer, ECSI is supposed to be compensated by the educational institution for collecting student loan borrowers' monthly payments—not via additional "processing" or "convenience" fees that do not reflect the cost to ECSI of providing such services. ECSI unlawfully inflates its costs of processing loan payments online or by phone above the actual cost and imposes Pay-to-Pay Fees on borrowers to create a windfall for itself. Indeed, upon investigation and belief, the actual cost for ECSI to process student loan payments made online or by phone is very low—far below the Pay-to-Pay Fees that ECSI charges borrowers. ECSI pockets the difference as pure profit.

4.      Plaintiffs Rebecca Nguyen, Tamica Brewster, and Kyle Strickenberger paid these Pay-to-Pay Fees and bring this class action lawsuit individually and on behalf of all similarly

situated putative class members to recover the unlawfully charged Pay-to-Pay Fees and to enjoin ECSI from continuing to charge them.

## **THE PARTIES**

5.      Plaintiff Nguyen is a citizen and resident of California, residing in Orange County. During the Class Period, Plaintiff Nguyen made payments on a federal Perkins loan serviced by ECSI. During the Class Period, ECSI charged Plaintiff Nguyen Pay-to-Pay Fees.

6.      Plaintiff Brewster is a citizen and resident of California, residing in Sacramento County. During the Class Period, Plaintiff Brewster made payments on a federal Perkins loan serviced by ECSI. During the Class Period, ECSI charged Plaintiff Brewster Pay-to-Pay Fees.

7.      Plaintiff Strickenberger is a citizen and resident of Illinois, residing in Cook County. During the Class Period, Plaintiff Strickenberger made payments on a federal Perkins loan serviced by ECSI. During the Class Period, ECSI charged Plaintiff Strickenberger Pay-to-Pay Fees.

8.       ECSI is a higher education student loan servicer. Student loans are disbursed by educational institutions, and ECSI enters into servicing agreements with those institutions pursuant to which ECSI services the student loans those schools disburse. Per these servicing agreements, ECSI assumes the performance of many of the obligations that educational institutions are originally tasked with in student loan agreements, including Plaintiffs' and Class members' federal Perkins loans. ECSI (a) acts as the agent for those schools and (b) exercises the rights and responsibilities conferred to schools in student loan agreements pursuant to their approval. In this manner, ECSI either takes assignment of the servicing obligations in borrowers' loan agreements and/or is in functional privity and near privity of contract with Plaintiffs and Class members.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over all state law claims pursuant to the Class

Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various

sections of Title 28 of the United States Code).

10.      Plaintiffs are citizens of different states than Defendant, who is a citizen of

Pennsylvania. Plaintiff Nguyen and Plaintiff Brewster are citizens of California, and Plaintiff

Strickenberger is a citizen of Illinois.

11.      The  amount in controversy exceeds $5,000,000 and there are at least one hundred

members of each of the Proposed Classes. *See* 28 U.S.C. § 1332(d)(2), (d)(6).

12.      This Court has personal jurisdiction over ECSI because it has its headquarters

and principal place of business in this District.

13.      Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(1) because ECSI has

its headquarters and principal place of business in this District.

## STATEMENT OF FACTS

### The Student Loan Servicing Industry

14.      Pursuant to federal legislation and regulations, the federal government offers or

funds a series of loans to meet students' financial aid needs. These include both direct loans

disbursed, administered, and collected by the government itself (or loan servicers that contract

with the government) and indirect loans disbursed, administered, and collected by educational

institutions (or loan servicers that contract with the schools) but paid for in whole or in part with

government funds.

15.      Perkins loans are one such indirect federal loan. Under the Perkins loan program,

which was operated by the United States Department of Education, the government funded low

interest, indirect loans to undergraduate and graduate students with qualifying financial needs. Established in 1957, the Perkins loan program provided $36 billion in financial aid to more than 30 million low-income borrowers over its lifetime. The government phased out the program in 2017-18, with new disbursements of loan funds ending in June 2018. Even so, millions of people continue to repay Perkins loans issued before that time.

16.     Perkins loans were disbursed by the student's educational institution, and students' Master Promissory Note agreements were made with the educational institution. However, the federal government supplied participating schools with most of the funding for Perkins loans and conditioned receipt of those funds on a series of regulations governing the content of the loan agreements and the schools' (or their agents') information disclosures and collection practices. Some educational institutions also contributed a portion of the funds for Perkins loans.

17.     Additionally, all educational institutions were required to use the standardized Perkins loan Master Promissory Note template provided by the Department of Education and were prohibited from making substantive changes to this template. *See* 34 C.F.R. § 674.31 (2000). The Department of Education's Master Promissory Note template, OMB No. 1845-0074 (last revision July 7, 2015), is attached as Exhibit A to this Class Action Complaint.

18.     During the life of the Perkins loan program, the federal government paid the interest on the loans while students remained in school, and the student was not required to begin repaying loans as long as they were enrolled in a qualifying educational institution on at least a half-time schedule.

19.     Absent certain extenuating circumstances, students were (and still are) required to begin repaying their Perkins loan no later than nine months after graduating or dropping below

half-time enrollment. Students could also choose to begin repaying their loans while still enrolled or during the nine-month grace period.

20.     Most educational institutions that administer Perkins loans contract with private loan servicers, like ECSI, to perform the tasks required to service the loans, such as sending billing statements, processing payments, furnishing loan forbearance or deferment request forms, and providing online and telephone customer service to borrowers.

21.     Typically, the school pays the loan servicer a monthly fee for each loan it services on behalf of the school. The servicing agreements between educational institutions and servicers typically compensate the servicers according to one of two approaches: percentage basis or unit-cost basis. Under the percentage approach, the school pays the servicer a percentage of the borrower's remaining loan balance. Under the unit-cost approach, the school pays the servicer a fixed amount per month, regardless of the remaining loan balance. In either case, the servicer negotiates its compensation to cover the costs of servicing the loan.

**ECSI Charges Illegal Pay-to-Pay Fees**

22.     ECSI is a large servicer of Perkins loans. ECSI does not disclose the terms of its loan-servicing agreements publicly.

23.     Each time a student loan borrower whose loan is serviced by ECSI makes a payment over the phone or online, ECSI charges the following Pay-to-Pay Fees:

- A fee of 3.95% of the payment amount, plus a flat fee of $1.00, if the borrower makes a one-time or recurring online payment via debit or credit card;

- A flat fee of $1.95 for ACH payments from the borrower's checking or savings account;

- A fee of 3.95% of the payment amount, plus a flat fee of $10.00, if the borrower makes a one-time payment via debit or credit card by phone.

24.     ECSI does not charge a processing or convenience fee if the borrower pays via check or money order, a bill-pay service offered by the borrower's bank, or if the borrower sets up recurring (automatic) ACH (bank-to-bank) payments from the borrower's checking or savings account.

25.      These Pay-to-Pay Fees are substantially higher than the costs incurred by ECSI, providing it hundreds of dollars in profits over the life of a single loan. Typically, a loan servicer will use a vendor to process transactions. These third-party vendors, such as Western Union and ACI Worldwide, generally charge loan servicers 50 cents or less per internet or phone transaction. The Association for Financial Professionals wrote a report in 2015 stating that the median cost for processing electronic payment transactions was between 37 and 75 cents—much less than the estimated $1 to $4 cost to loan servicers for processing checks, which ECSI does for free. Thus, ECSI already earns a profit in the form of reduced costs each time a borrower elects to pay online or over the phone in lieu of mailing a check. ECSI has a financial incentive to offer the choice to pay by phone or online and would do so even if it could not charge Pay-to-Pay Fees. Indeed, other student loan servicers, such as Navient, do not charge borrowers a fee to pay online or over the phone.

26.     ECSI's imposition of Pay-to-Pay Fees also amounts to double charging because these additional fees are charged over and above the servicing fees ECSI negotiated in its agreement with the educational institution.

27.     By giving borrowers the option to pay online or by phone, ECSI purports to provide a valuable service to which borrowers would not otherwise be entitled. That assertion is wrong

and misleading because borrowers already pay ECSI to service their loans by paying their monthly

payments as prearranged by the servicing agreements. If ECSI wants to make more money, it can

negotiate a larger fee from the school. It should not get to double dip—pocketing the servicing cut

while charging borrowers for doing the work it has already been paid to do.

28.     ECSI further knows that borrowers depend on the ability to make payments over

the telephone and online, notwithstanding the options to pay by mail or via a reoccurring ACH

debit. For example:

- Delays are frequently an issue when using the U.S. Postal Service, and using the mail increases the risk of a payment never being received or being received late.

- Borrowers may have budgetary needs or personal preferences that cause them to want more control over their finances; indeed, many people repaying Perkins loans are recent college graduates and living on fixed budgets. The ACH system is impractical for these borrowers, as it requires that one agree to a fixed amount and date for the debit each month out of a pre-determined bank account and increases a borrower's vulnerability to banking errors.

- Other borrowers may be sharing responsibility for paying their student loans with another person, such as a parent, and funds to pay it come from multiple bank accounts.

- Some borrowers may have agreed to have monthly payments debited via ACH but elect to pay extra on their loans when they have additional available funds; those borrowers must pay a Pay-to-Pay Fee to do so.

29.     ECSI gets away with these illegal Pay-to-Pay Fees because borrowers cannot

choose another student loan servicer or shop around for a better deal. Borrowers are forced to have

ECSI as their loan servicer as a result of the unilateral decision of their educational institution.

**The Federal and State Policies Against Pay-to-Pay Fees**

30.     Pay-to-Pay Fees are nothing new, and they are not unique to the student loan

industry. And they have earned condemnation from federal and state legislatures, regulators, and

attorneys general. The federal government and state governments have issued statements

condemning Pay-to-Pay Fees and prohibiting loan servicers and debt collectors from assessing

them.

31.     For example, in October 2021, the Consumer Financial Protection Bureau ("CFPB"), which has authority to promulgate rules and interpretations under the Federal Debt Collection Practices Act ("FDCPA"), filed an *amicus* brief in a matter before the Ninth Circuit explaining its position that Pay-to-Pay Fees are junk fees that violate federal law and policy. The CFPB explained:

> The FDCPA was designed to rein in unethical debt collectors, and [the FDCPA] specifically was designed to limit the amounts that debt collectors could try to collect from consumers. But under the district court's interpretation, debt collectors can collect additional fees, like the pay-to-pay fees at issue here, whenever no other law specifically prohibits them—leaving debt collectors with the power and discretion to try to collect additional fees during the collection process. This is particularly problematic given that consumers have no ability to shop around for a better deal. And it's not as if these pay-to-pay fees are necessary for debt collectors to offer phone or online payment options that consumers might want, as it is generally cheaper for collectors to accept payment by phone or online than to accept payment by mail (which is typically the fee-free option). Pay-to-pay fees are thus most often just a way for debt collectors to take advantage of consumers by trying to extract more money than they originally bargained for or reasonably expected to pay.

Brief of *Amicus Curiae* Consumer Financial Protection Bureau in Support of Plaintiffs-Appellants at 11, *Thomas-Lawson v. Carrington Mort. Servs.*, No. 21-55459 (9th Cir. filed Oct. 21, 2021), ECF No. 22.

32.     In June 2022, the CFPB issued an advisory opinion in which it "affirm[ed]" its position that imposition of "pay-to-pay or 'convenience' fees, such as fees imposed for making a payment online or by phone," where those fees are not contractually or legally authorized, is an "unfair or unconscionable means to collect or attempt to collect any debt" prohibited by Section 808(1) of the FDCPA and the CFPB's regulations implementing that provision.

33.     Although the FDCPA does not directly apply in this context, the Rosenthal Act makes violations of the FDCPA's prohibition on Pay-to-Pay Fees independently actionable under

its statutory scheme. And the CFPB's position on Pay-to-Pay Fees affirms the clear federal policy against them in myriad contexts.

34.     State attorneys general have likewise taken steps to crack down on these unlawful Pay-to-Pay fees. In January 2021, a coalition of 33 state attorneys general, including those representing Illinois and California, intervened to object to a settlement in a class action lawsuit against the mortgage loan servicer PHH Mortgage Corporation in which the settlement purported to allow PHH to continue to charge Pay-to-Pay Fees that are not authorized by borrowers' loan agreements. The New York Attorney General, speaking for the coalition, condemned the fees as unlawful:

> "When Americans utilize online or phone payments to pay off their monthly mortgages, [mortgage servicer] PHH benefits, but instead of passing those savings on to homeowners PHH charged illegal fees and increased costs for nearly one million Americans," said Attorney General James. "PHH's sole purpose is to collect and process homeowners' payments, which it already makes millions of dollars from each year. In the 21st century, when most Americans pay their bills online or by phone, to charge fees on top of what they are already being paid is not only unethical, but unlawful."
>
> For years, PHH charged nearly one million homeowners an illegal fee—ranging from $7.50 to $17.50—each time a homeowner made a monthly mortgage payment online or by phone, despite most Americans paying their mortgages one of these two ways. Nowhere in these homeowners' mortgage contracts is there authorization for such fees and PHH does not charge "processing" fees for any other customers, including those who pay by check or those who set up automatic debit payments. Charging fees not mentioned in the mortgage contract is illegal and, under New York's mortgage servicing regulations, explicitly forbidden.

Press Release, N.Y. State Att'y Gen., *Attorney General James Leads Bipartisan Coalition Fighting to Protect Nearly One Million Homeowners from Unlawful Fees* (Jan. 29, 2021), https://ag.ny.gov/press-release/2021/attorney-general-james-leads-bipartisan-coalition-fighting-protect-nearly-one.

35.     In connection with that coalition, then-Attorney General of California Xavier Becerra emphasized that Pay-to-Pay Fees are illegal, stating, "PHH Mortgage Corp[.] raked in cash w[ith] illegal processing fees, and is now trying to secure a class action settlement allowing it to change homeowners' contracts to continue charging these fees. 33 AGs are pushing back. With millions of families stretched thin, every cent counts." Attorney General Becerra (@AGBecerra), Twitter (Jan. 29, 2021, 3:17 p.m.), https://twitter.com/AGBecerra/status/1355248602864472066. "We're fighting for a fair settlement that actually benefits homeowners, not PHH." Attorney General Becerra (@AGBecerra), Twitter (Jan. 29, 2021, 3:17 p.m.), https://twitter.com/AGBecerra/status/1355248603623686144.

36.     Likewise, the office of Illinois Attorney General Kwame Raoul issued a press release decrying the "illegal payment processing fees" and taking issue with the fact that the servicer would be permitted "to profit from unethical and illegal conduct." Press Release, Ill. Att'y Gen., *Attorney General Raoul Fights to Protect Homeowners for Unlawful Fees* (Jan. 29, 2021), https://illinoisattorneygeneral.gov/pressroom/2021_01/20210129.html#:~:text=For%20years%2C%20PHH%20charged%20nearly,one%20of%20these%20two%20ways.

37.     Although these attorneys general focused on Pay-to-Pay Fees in the mortgage-servicing industry, the principles are fully applicable to the student loan servicing industry.

38.     Indeed, in the past decade, New York's Department of Financial Services has entered into five consent orders or agreements with lenders charging similar unlawful Pay-to-Pay Fees.[1]

**ECSI Charged Plaintiffs Pay-to-Pay Fees**

**Plaintiff Nguyen**

39.     Plaintiff Nguyen's Perkins loan agreement is substantively identical to the Department of Education's Perkins loan Master Promissory Note template. *See* Ex. A.

40.     ECSI services Plaintiff Nguyen's Perkins loan on behalf of its lender principal, the University of California, Los Angeles. As the servicer, ECSI has the right to collect payments and otherwise service Plaintiff Nguyen's Perkins loan.

41.     Plaintiff Nguyen began repaying her Perkins loan in October 2017. Since that day, Plaintiff Nguyen has not borrowed additional funds via the Perkins loan program and has at all relevant times had an outstanding balance on her Perkins loan. Pursuant to the terms of her loan, she must make a quarterly payment of $135.12, and thus, at all relevant times, a payment on her loan was due and owing.

42.     On multiple occasions during the relevant period, including in March 2021, Plaintiff Nguyen made her payment online via one-time direct debit (ACH). Each time she made her payment via this method, ECSI charged a service fee of at least $1.95.

---

[1] *See* Consent Orders to Ocwen Financial Corporation, Ocwen Loan Servicing LLC on the following dates: March 27, 2017, Dec 22, 2014, Dec. 5, 2012, and Dec. 15, 2011, available at https://www.dfs.ny.gov/industry_guidance/enforcement_actions_mortgage.

**Plaintiff Brewster**

43.     Plaintiff Brewster's Perkins loan agreement is substantively identical to the Department of Education's Perkins loan Master Promissory Note template. *See* Ex. A.

44.     ECSI services Plaintiff Brewster's Perkins loan on behalf of its lender principal, Sacramento State University. As the servicer, ECSI has the right to collect payments and otherwise service Plaintiff Brewster's Perkins loan.

45.     Plaintiff Brewster began repaying her Perkins loan in October 2016. Since that day, Plaintiff Brewster has not borrowed additional funds via the Perkins loan program and has at all relevant times had an outstanding balance on her Perkins loan. Pursuant to the terms of her loan, she must make a monthly payment of $48.00, and thus, at all relevant times, a payment on her loan was due and owing.

46.     On multiple occasions during the relevant period, including on February 1, 2022, Plaintiff Brewster made her payment online via a credit or debit card. Each time she made her payment via this method, ECSI charged a service fee of at least $2.90.

**Plaintiff Strickenberger**

47.     Plaintiff Strickenberger's Perkins loan agreement is substantively identical to the Department of Education's Perkins loan Master Promissory Note template. *See* Ex. A.

48.     ECSI services Plaintiff Strickenberger's Perkins loan on behalf of its lender principal, The University of North Carolina at Chapel Hill. As the servicer, ECSI has the right to collect payments and otherwise service Plaintiff Strickenberger's Perkins loan.

49.     Plaintiff Strickenberger began repaying his Perkins loan in March 2017. Since that day, Plaintiff Strickenberger has not borrowed additional funds via the Perkins loan program and has at all relevant times had an outstanding balance on his Perkins loan. Pursuant to the terms of

his loan, he must make a monthly payment of $67.89, and thus, at all relevant times, a payment on his loan was due and owing.

50.     On at least one occasion during the relevant period, including in January 2020, Plaintiff Strickenberger made his payment online via one-time direct debit (ACH). Each time he made his payment via this method, ECSI charged a service fee of at least $1.00.

51.     The costs associated with processing Plaintiffs' online student loan payments were much lower than the Pay-to-Pay Fees ECSI imposed. ECSI charged these Pay-to-Pay Fees purely to profit from Plaintiffs making their student loan payments.

52.     Plaintiffs' Perkins loan agreements do not contain any language authorizing ECSI to assess and collect Pay-to-Pay Fees.

53.     Plaintiffs continue to make payments on their Perkins loans to ECSI. Because they cannot choose a new loan servicer, they are at risk of being forced to pay Pay-to-Pay Fees again. Even though both Plaintiffs are currently making their payments via check or reoccurring ACH debits, errors or delays may happen that are outside of their control that require them to make a payment online or over the phone and incur a Pay-to-Pay Fee. And if they ever wanted to pay additional funds on their loans beyond their monthly payments, they would need to pay by phone to ensure the payment is applied correctly to the balance and not the next payment, causing them to incur a Pay-to-Pay fee.

## APPLICABLE LAW

### California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") and Other Materially Uniform Fee-Prohibiting State Statutes

54.     The Rosenthal Act is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *Komarova v. Nat'l Credit Acceptance, Inc.* 95 Cal. Rptr. 3d 880, 892 (Cal. Ct. App 2009).

55.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

56.     The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *Id.* § 1788.2(f).

57.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." *Id.* § 1788.2(e).

58.     The Rosenthal Act prohibits "Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." *Id.* § 1788.14(b).

59.     The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." *Id.* § 1788.13(e).

60.     The Rosenthal Act also makes it illegal for any entity covered by it to violate Sections 1692b to 1692j of the FDCPA. *Id.* § 1788.17. In so doing, it makes those meeting the definition of "debt collector" set forth in section 1788.2(c) liable for violating the FDCPA. Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1).

61.     Many other states have debt collection statutes like California's Rosenthal Act that adopt Section 1692f(1) outright or contain the same or materially uniform language prohibiting Pay-to-Pay Fees. Along with California, these states (the "Fee-Prohibiting States") and the relevant statutes are as follows:

a.     Maryland prohibits debt collectors from engaging in "any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act" (Section 808 of the FDCPA is codified in 15 U.S.C. § 1692f(1)) and provides that "[i]n collecting or attempting to collect an alleged debt[,] a collector may not" "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8), (11).

b.     Texas prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(2).

c.     West Virginia prohibits "[t]he collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation." W. Va. Code § 46A-2-128(d).

d.     Pennsylvania prohibits "[t]he collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 73 Pa. Cons. Stat. § 2270.4(b)(6)(i).

e.      Oregon makes it unlawful for a debt collector to "[c]ollect[] or attempt[] to collect interest or other charges or fees that exceed the actual debt unless the agreement, contract or instrument that creates the debt expressly authorizes, or a law expressly allows, the interest or other charges or fees." Or. Rev. Stat. § 646.639(2)(n).

f.      Iowa prohibits the "collection of or the attempt to collect interest or other charge, fee or expense incidental to the principal obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor, or is otherwise legally chargeable." Iowa Code § 537.7103(5)(d).

g.      New Hampshire makes it unlawful for a debt collector to "[c]ollect[] or attempt[] to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor." N.H. Rev. Stat. Ann. § 358-C:3(X).

**California and Illinois's Student Borrower Bill of Rights and Other Materially Uniform State Student Loan Borrower Bills of Rights**

62.      In November 2018, Illinois enacted the Illinois Student Loan Bill of Rights, which went into effect in December 2019 and is codified at 110 Ill. Comp. Stat. 992/5. In September 2020, California enacted a similar bill, the Student Borrower Bill of Rights, AB 376 (codified at Cal. Civ. Code §§ 1788.100 *et seq.*). Both states adopted these important consumer protection laws to ensure that student loan servicers act in the best interests of borrowers.

63.      In enacting the Student Borrower Bill of Rights, the California Legislature found that student loan debt "affect[s] every aspect" of borrowers' lives and "casts a shadow that many Californians cannot escape," yet "the $1.5 trillion student loan market is plagued with predatory

practices." Cal. A.B. 376 (2020) § 1(a)(2), (4). Accordingly, the Legislature concluded that student loan borrowers must "be given . . . reliable information[,] quality customer service[,] and fair treatment." *Id.* § 1(a)(8). Accordingly, the Student Borrower Bill of Rights must be "liberally construed to effectuate" the Legislature's intent. *Id.* § 1(b)(4).

64.    The Student Borrower Bill of Rights defines "borrower" as a "person who has received or agreed to pay a student loan" or a "person who shares responsibility for repaying a student loan"; a "person" as "an individual, a corporation, a partnership, a limited liability company, an association, a trust, an unincorporated organization, a government, or a political subdivision of a government, and any other entity"; and "student loan servicer" as "any person engaged in the business of servicing student loans" in California. Cal. Civ. Code § 1788.100(a), (m), (s).

65.    The Student Borrower Bill of Rights prohibits any "person" from engaging in "abusive acts or practices when servicing a student loan" in California, including but not limited to—as relevant here—taking unreasonable advantage of a borrower's lack of understanding of the costs or conditions of their student loan or their reliance on a loan servicer's duty to act in the interests of the borrower. *Id.* § 1788.101(a). It further prohibits student loan servicers from "misrepresent[ing] or omit[ting] material information in connection with the servicing of a student loan," including, as relevant here, "misrepresenting the amount, nature, or terms of a fee or payment due or claimed to be due on a student loan, the terms and conditions of the student loan agreement, or the borrower's obligations under the student loan." *Id.* § 1788.101(b).

66.    Illinois's law is similar, prohibiting student loan servicers from engaging in

> any unfair or deceptive practice toward any borrower or cosigner or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a student loan, including, but not limited to, misrepresenting the amount, nature, or terms of any fee

or payment due or claimed to be due on a student loan, the terms and conditions of the student loan agreement, or the borrower's or cosigner's obligations under the student loan or the terms of any repayment plans.

110 Ill. Comp. Stat. 992/5-5(a).

67.     At least nine other states have followed suit, enacting materially identical laws that require student loan servicers to act in borrowers' best interests. Specifically:

a.      Colorado prohibits student loan servicers from engaging in "unfair or deceptive practice[s] toward" borrowers or misrepresenting or omitting "any material information in connection with the servicing of a student education loan, including misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement, or the student loan borrower's obligations under the loan." Colo. Rev. Stat. § 5-20-109(b).

b.      Connecticut prohibits student loan servicers from engaging in "any unfair or deceptive practice toward any person or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement or the borrower's obligations under the loan." Conn. Gen. Stat. § 36a-850(2).

c.      Maine forbids a student loan servicer from engaging in "any unfair or deceptive practice toward" any student borrower or misrepresenting or omitting "any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions

of the loan agreement or the borrower's obligations under the loan." Me. Stat. tit. 9-A, §

14-108(3)(B).

        d.      Maryland forbids a student loan servicer from misrepresenting or

omitting "material information in connection with the servicing of a student education

loan," including, as relevant here, "[a]ny fee owed by a student loan borrower," "[t]he

terms and conditions of the student education loan," or "[t]he student loan borrower's

obligations under the student education loan"; or by otherwise obtaining property from a

borrower "by misrepresentation of fact or omission of material fact." Md. Code Ann.,

Educ. § 26-602(3)–(4).

        e.      New Jersey prohibits student loan servicers from engaging in "any

unfair or deceptive practice" toward any student borrower or misrepresenting or omitting

"any material information in connection with the servicing of a student education loan,

including, but not limited to, misrepresenting the amount, nature or terms of any fee or

payment due or claimed to be due on a student education loan, the terms and conditions

of the loan agreement or the borrower's obligations under the loan." N.J. Stat. Ann. §

17:16ZZ-9(b).

        f.      New York forbids student loan servicers from committing "any

unfair, deceptive or predatory act or practice" toward student loan borrowers or

misrepresenting or omitting "any material information in connection with the servicing

of a student loan, including, but not limited to, misrepresenting the amount, nature or

terms of any fee or payment due or claimed to be due on a student loan, the terms and

conditions of the loan agreement or the borrower's obligations under the loan." N.Y.

Banking Law § 719(b).

g.      Rhode Island prohibits student loan servicers from engaging in "any unfair or deceptive practice" toward any student loan borrower or misrepresenting or omitting "any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement, or the borrower's obligations under the loan." 19 R.I. Gen. Laws Ann. § 19-33-12(2).

h.      Virginia forbids student loan servicers from engaging in "any unfair or deceptive act or practice toward any person or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a qualified education loan, including misrepresenting (i) the amount, nature, or terms of any fee or payment due or claimed to be due on a qualified education loan; (ii) the terms and conditions of the loan agreement; or (iii) the borrower's obligations under the loan." Va. Code Ann. § 6.2-2610(A)(2). It further prohibits student loan servicers from engaging in "abusive acts or practices when servicing a qualified education loan," including taking unreasonable advantage of a borrower's lack of understanding of the "costs[] or conditions of the qualified education loan" or the borrower's reasonable reliance on the servicer's duty to act in the interests of the borrower." *Id.* § 6.2-2610(C).

i.      Washington prohibits student loan servicers from "[m]isrepresent[ing] or omit[ting] any material information in connection with the servicing of a student education loan including, but not limited to, misrepresenting the amount, nature, conditions, or terms of any fee or payment due or claimed to be due on

a student education loan, the terms and conditions of the loan agreement, . . . or the borrower's obligations under the loan." Wash. Rev. Code § 31.04.027(2)(b).

68.    The Student Loan Borrower Bill of Rights in each of these states contains a private cause of action for damages, either through a direct cause of action included in the Student Loan Borrower Bill of Rights itself or by making violations of the Student Loan Borrower Bill of Rights a predicate violation of the state's consumer protection statute.

**The California Unfair Competition Law**

69.    The UCL defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

70.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

71.    In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

**The Illinois Consumer Fraud and Deceptive Practices Act**

72.    The ICFA prohibits "unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2.

73.    An act or practice is "unfair" if it offends public policy, if it is immoral, unethical, oppressive, or unscrupulous, or if it causes substantial injury to consumers.

## TOLLING

74.    Equitable tolling applies to Plaintiffs' claims to the extent ECSI misrepresented and concealed the true nature of the fees charged to Plaintiffs' and Class members' student loan accounts.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs Nguyen, Brewster, and Strickenberger bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a Nationwide Class defined as follows:

> **Nationwide Class**: All persons (1) with a federal Perkins loan in the United States, (2) serviced by ECSI, (3) who paid a fee to ECSI for making a loan payment by telephone or online during the applicable statutes of limitations through the date a class is certified.

76.     Plaintiffs Nguyen, Brewster, and Strickenberger bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a multistate Class defined as follows:

> **Fee-Prohibiting State Class:** All persons (1) with a federal Perkins loan in the United States, (2) serviced by ECSI, (3) who reside in a Fee-Prohibiting State, (4) who paid a fee to ECSI for making a loan payment by telephone or online during the applicable statutes of limitations through the date a class is certified.

77.     Plaintiffs Nguyen, Brewster, and Strickenberger bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a multi-state Class defined as follows:

> **Student Loan Borrower Bill of Rights State Class:** All persons (1) with a federal Perkins loan in the United States, (2) serviced by ECSI, (3) who reside in a State with an actionable Student Loan Borrower Bill of Rights, (4) who paid a fee to ECSI for making a loan payment by telephone or online during the applicable statutes of limitations through the date a class is certified.

78.     Plaintiffs Nguyen and Brewster bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the California Class defined as follows:

> **California Class:** All persons (1) with a federal Perkins loan in California, (2) serviced by ECSI, (3) who paid a fee to ECSI for making a loan payment by telephone or online during the applicable statutes of limitations through the date a class is certified.

79.     Plaintiff Strickenberger brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the Illinois Class defined as follows:

> **Illinois Class:** All persons (1) with a federal Perkins loan in Illinois, (2) serviced by ECSI, (3) who paid a fee to ECSI for making a loan payment by telephone or online during the applicable statutes of limitations through the date a class is certified.

80.     Excluded from the Classes are ECSI, any entity in which ECSI has or had a controlling interest or which has or had a controlling interest in ECSI; ECSI's employees, officers, directors, legal representatives, assigns, and successors; the judicial officer(s) to whom this matter is assigned and their immediate family; and Class members who timely opt-out of any certified 23(b)(3) opt-out Class.

81.     Plaintiffs reserve the right to modify or amend the definition of the Classes before the Court determines whether certification is appropriate.

## Numerosity (Rule 23(a)(1))

82.     Each of the proposed Classes is so numerous that joinder of all members would be impracticable; ECSI services hundreds of thousands of loans. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by ECSI. The precise number of Class members can be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.

## Commonality (Rule 23(a)(2))

83.     There are core questions of law and fact that are common to Plaintiffs' and Class members' claims.

84.     These common questions predominate over any questions that go particularly to any individual member of the Classes. Among such common questions of law and fact are the following:

      a.     whether Class members' loan agreements authorized Pay-to-Pay Fees;

      b.     whether ECSI was in near or functional privity or privity of contract with Class members;

      c.     whether ECSI was operating as an agent for the educational institutions who provided Perkins loans to borrowers;

      d.     whether ECSI charged Class members Pay-to-Pay Fees;

      e.     whether the Pay-to-Pay Fees were in excess of the actual cost of the fees, *i.e.*, the costs and charges incurred by ECSI to accept student loan payments by ACH, debit card, or credit card;

      f.     whether ECSI breached Class members' loan agreements and violated state and federal laws;

      g.     whether Plaintiffs and Class members were damaged by ECSI's conduct;

      h.     whether Plaintiffs and Class members are entitled to restitution;

      i.     whether Plaintiffs and Class members are entitled to attorneys' fees and costs; and

      j.     the appropriate remedies due by ECSI to Class members.

**Typicality (Rule 23(a)(3))**

85.     Plaintiffs are members of the Classes they seek to represent. Plaintiffs' claims are typical of claims of the other Class members because of the similarity, uniformity, and common purpose of ECSI's unlawful conduct. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of ECSI's unlawful conduct.

**Adequacy of Representation (Rules 23(a)(4) and 23(g))**

86.     Plaintiffs are adequate representatives of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and the unnamed Class members.

87.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, who are experienced in class action litigation, fraud litigation, and debt-collection litigation, and who have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Predominance and Superiority (Rule 23(b)(3))**

88.     The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed Class members are based on ECSI's common fraudulent and unlawful conduct based on uniform policies involving uniform (and form) student loan agreements.

89.     Moreover, common questions of law predominate, including whether the assessment of Pay-to-Pay Fees violates the student loan agreements and are assessed in bad faith.

90.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even though some individualized damages determinations may be necessary.

91.     A class action is superior to individual actions to fairly and efficiently adjudicate this matter. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

92.     Joinder of all Class members would create extreme hardship and inconvenience for the affected borrowers as they are dispersed geographically and reside across multiple states.

93.     Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions.

94.     There are no known individual Class members who are interested in individually controlling the prosecution of separate actions.

95.     The interests of justice will be well served by resolving the common disputes of potential Class members in one forum. Individual suits would not be cost effective or economically maintainable, and the action is manageable as a class action.

**Requirements of Rule 23(b)(1), (2)**

96.     Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for ECSI.

97.     ECSI acted or failed to act in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**On Behalf of Plaintiffs Nguyen, Brewster, and Strickenberger and all Classes**

98.     Plaintiffs repeat and reallege each preceding paragraph of this Complaint as if fully set forth herein.

99.     Plaintiffs and the other members of the Classes have executed standardized Perkins Loan Master Promissory Notes ("Perkins loan agreements") for loans serviced by ECSI.

100.     ECSI is in functional privity or near privity of contract with Plaintiffs and Class members as a result of its fulfillment of its principals' duties and obligations running from Plaintiffs' and Class members' Perkins loan agreements, including but not limited to: (i) the collection of all monies due under those loan agreements; (ii) preparing and transmitting monthly statements concerning those loan agreements; (iii) performing all or nearly all customer service functions concerning those loan agreements; and (iv) engaging in written and oral communications concerning those loan agreements.

101.     A covenant of good faith and fair dealing is implied in every contract, including the standard Perkins loan MPNs serviced and administered by ECSI. This covenant imposes upon each party a duty of good faith and fair dealing in the performance of the contract.

102.     Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party or deprive the other party of the benefits of the contract.

103.     ECSI has breached its duties of good faith and fair dealing by abusing the discretion afforded by Plaintiffs' and Class members' Perkins loan agreements and imposing improper Pay-to-Pay Fees. Its assessment of unlawful Pay-to-Pay Fees—which benefit only ECSI and provide

no value to Plaintiffs and Class members—deprives Plaintiffs and Class members of the benefit of their student loan agreements by artificially and unlawfully inflating the amounts due on their loans, which contravenes what borrowers contracted for in their Perkins loan agreements.

104.    As a direct and proximate result of these breaches of the covenant and duties of good faith and fair dealing, Plaintiffs and the Classes have suffered damages.

105.    Plaintiffs and the other members of the Classes were each making payments on their loans at the time the Pay-to-Pay Fees were charged and were at all relevant times otherwise in compliance with and not in breach of their MPNs. Alternatively, ECSI elected its remedy to continue to perform under those loan agreements even after asserting a breach by Plaintiffs and other members of the Classes.

106.    As a result of ECSI's breach of the covenant and duties of good faith and fair dealing, Plaintiffs and the members of all Classes seek actual damages, equitable remedies including an injunction, disgorgement, restitution, imposition of a constructive trust, and the payment of attorneys' fees and reasonable expenses for this action.

### SECOND CAUSE OF ACTION
**VIOLATION OF SECTIONS 1788.14(b) AND 1788.17 OF CALIFORNIA'S ROSENTHAL ACT AND MATERIALLY UNIFORM STATE FEE-PROHIBITING STATUTES
On Behalf of Plaintiff Nguyen and Plaintiff Brewster, the Fee-Prohibiting State Class, and the California Class**

107.    Plaintiffs repeat and reallege each preceding paragraph of this Complaint as if fully set forth herein.

108.    Plaintiff Nguyen and Plaintiff Brewster bring this claim on behalf of themselves, the California Class, and the multistate Fee-Prohibiting State Class under the state fee-prohibiting statutes, all of which incorporate or otherwise contain language mirroring Section 1692f(1) of the federal FDCPA, which prohibits "the collection of any amount (including any interest, fee, charge,

-29-

or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The fee-prohibiting statutes governing this claim expand the application of the FDCPA to all consumer debt, not just that debt acquired in default. Thus, as to ECSI's assessment of Pay-to-Pay Fees on these Classes, these state laws are materially uniform in the states of California, Maryland, Texas, West Virginia, Pennsylvania, Oregon, Iowa, and New Hampshire.

109.    The eight states identified above have enacted the following fee-prohibiting statutes, all of which are materially similar and were designed to effectuate the states' public policy against Pay-to-Pay Fees:

a.    California's Rosenthal Act provides that debt collectors "shall comply with the provisions of Sections 1692b to 1692j" of the FDCPA and prohibits "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code §§ 1788.14(b), 1788.17.

b.    Maryland prohibits debt collectors from engaging in "any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act" (Section 808 of the FDCPA is codified in 15 U.S.C. § 1692f(1)), and provides that "[i]n collecting or attempting to collect an alleged debt[,] a collector may not" "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8), (11).

c.    Texas prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest

or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(2).

        d.     West Virginia prohibits "[t]he collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation." W. Va. Code § 46A-2-128(d).

        e.     Pennsylvania defines an unfair or deceptive debt collection act or practice as a violation of "any of the provisions of the Fair Debt Collection Practices Act" and prohibits "[t]he collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 73 Pa. Cons. Stat. § 2270.4(a), (b)(6)(i).

        f.     Oregon makes it unlawful for a debt collector to "[c]ollect[] or attempt[] to collect interest or other charges or fees that exceed the actual debt unless the agreement, contract or instrument that creates the debt expressly authorizes, or a law expressly allows, the interest or other charges or fees." Or. Rev. Stat. § 646.639(2)(n).

        g.     Iowa prohibits the "collection of or the attempt to collect interest or other charge, fee or expense incidental to the principal obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor, or is otherwise legally chargeable." Iowa Code § 537.7103(5)(d).

      h.     New Hampshire makes it unlawful for a debt collector to "[c]ollect[] or attempt[] to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor." N.H. Rev. Stat. Ann. § 358-C:3(X).

110.    The Rosenthal Act applies to ECSI because it regularly engages in debt collection as defined by the statute. *See* Cal. Civ. Code § 1788.2. ECSI is a debt collector under the statutory schemes of the other fee-prohibiting statutes identified above.

111.    All these fee-prohibiting statutes prohibit a debt collector from assessing any other charge, fee, or expense incidental to the principal and interest owed on Plaintiff Nguyen's, Plaintiff Brewster's, and Class Members' student loans unless such fees are either expressly authorized in their loan agreements or expressly authorized by law. But Plaintiff Nguyen's, Plaintiff Brewster's, and Class members' standardized federal Perkins loan agreements do not expressly authorize the "processing" or "convenience" fees that ECSI assesses when a borrower makes an online or telephone payment via credit card, debit card, or non-recurring ACH transfer. Moreover, no law authorizes the imposition of Pay-to-Pay Fees on Class members.

112.    ECSI knew that these Pay-to-Pay Fees were not expressly set out in the Perkins loan agreements held by Plaintiff Nguyen, Plaintiff Brewster, members of the Fee-Prohibiting State Class, and members of the California Class. ECSI also knew no law authorized collection of Pay-to-Pay Fees, yet it collected them anyway.

113.    In so doing, ECSI collected amounts not authorized by Plaintiff Nguyen's, Plaintiff Brewster's, and Class members' Perkins loan agreements or by law. As to Plaintiff Nguyen, Plaintiff Brewster, and the California Class, ECSI violated Section 1692f of the FDCPA, as

incorporated via section 1788.17 of the Rosenthal Act. As to those in the Fee-Prohibiting State Class, ECSI similarly violated all the fee-prohibiting state statutes listed above.

114.    Plaintiff Nguyen, Plaintiff Brewster, and the Class members were harmed when ECSI violated the fee-prohibiting statutes of the states listed above through the above-described conduct.

115.    As a result of each and every violation of the above-listed fee-prohibiting statutes, Plaintiff Nguyen, Plaintiff Brewster, and the California and Fee-Prohibiting State Class members are entitled to the following:

a.      California: Damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation to the full extent provided by law, pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c);

b.      Maryland: Damages pursuant to Md. Code Ann., Com. Law § 14-203;

c.      Texas: Actual damages, statutory damages to the full extent provided by law, and reasonable attorneys' fees and costs under Tex. Fin. Code Ann. § 392.403;

d.      West Virginia: Actual damages and statutory damages to the full extent provided by law under W. Va. Code § 46A-5-101; and reasonable attorneys' fees and costs under W. Va. Code § 46A-5-104;

e.      Pennsylvania: Actual damages or statutory damages of $100, whichever is greater, treble damages, and reasonable attorneys' fees and costs under 73 Pa. Cons. Stat. § 201-9.2;

      f.      Oregon: Actual damages or statutory damages of $200, whichever is greater, punitive damages to the full extent provided by law, and reasonable attorneys' fees and costs under Or. Rev. Stat. § 646.641;

      g.      Iowa: Actual damages and statutory damages to the full extent provided by law under Iowa Code § 537.5201;

      h.      New Hampshire: Actual damages or statutory damages of $200, whichever is greater, and reasonable attorneys' fees under N.H. Rev. Stat. Ann. § 358-C:4.

**<u>THIRD CAUSE OF ACTION</u>**
**VIOLATION OF SECTION 1788.13(e) OF CALIFORNIA'S ROSENTHAL ACT**
**On Behalf of Plaintiff Nguyen, Plaintiff Brewster, and the California Class**

116.    Plaintiffs repeat and reallege each preceding paragraph of this Complaint as if fully set forth herein.

117.    The Rosenthal Act applies to ECSI because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

118.    The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." *Id.* § 1788.13(e).

119.    By assessing Pay-to-Pay Fees, ECSI represented that the Perkins loan MPNs of Plaintiff Nguyen, Plaintiff Brewster, and the California Class members may be increased by the addition of Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

120.     Although the Perkins loan agreements of Plaintiff Nguyen, Plaintiff Brewster, and the California Class members do not expressly authorize collection of Pay-to-Pay Fees, ECSI collected such fees anyway.

121.     This conduct violated the Rosenthal Act.

122.     Plaintiff Nguyen, Plaintiff Brewster, and the Class Members were harmed when ECSI violated the Rosenthal Act through the above-described conduct.

123.     As a result of each and every violation of the Rosenthal Act, Plaintiff Nguyen, Plaintiff Brewster, and the California Class members are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code §§ 1788.30(b) and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

### FOURTH CAUSE OF ACTION
**VIOLATIONS OF THE CALIFORNIA & ILLINOIS STUDENT BORROWER BILL OF RIGHTS AND MATERIALLY UNIFORM STATE STUDENT LOAN BORROWER BILLS OF RIGHTS**
**On Behalf of Plaintiff Nguyen, Plaintiff Brewster, Plaintiff Strickenberger, the Student Loan Borrower Bill of Rights State Class, the California Class, and the Illinois Class**

124.     *Cal. Civ. Code § 1788.103(d)(1) notice.* Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiff Nguyen and Plaintiff Brewster specifically disclaim, at this time, any request for damages or injunctive relief under the California Student Borrower Bill of Rights. However, on December 1, 2022, Plaintiff Nguyen and Plaintiff Brewster sent a written notice and demand via certified mail that ECSI correct, repair, replace, or otherwise rectify the unlawful, unfair, deceptive, and abusive practices complained of herein. A true and correct copy of the notice and demand is attached as Exhibit B to this Class Action Complaint. Pursuant to California Civil Code § 1788.103(d)(1), if ECSI fails to correct and remedy the methods, acts, and practices complained of herein, Plaintiff Nguyen and Plaintiff Brewster will

amend this Class Action Complaint to seek, on behalf of themselves and those similarly situated Class members, the relief requested herein.

125.     *Me. Rev. Stat. tit. 5, § 213(1-A) notice*. Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiffs specifically disclaim, at this time, any request for damages or injunctive relief under the Maine Student Loan Borrower Bill of Rights. However, on December 1, 2022, Plaintiffs sent a written demand for relief via certified mail to ECSI's last known address, identifying the claimant and reasonably describing the unfair and deceptive acts and practices relied upon in this Class Action Complaint and the injuries suffered. A true and correct copy of the written demand is attached as Exhibit B to this Class Action Complaint. Pursuant to Me.  Rev. Stat. tit. 9-A, § 14-108(4)(A) and Me. Rev. Stat. tit. 5, § 213(1-A), if ECSI fails to correct and remedy the methods, acts, and practices complained of herein, Plaintiffs will amend this Class Action Complaint to seek, on behalf of themselves and those similarly situated Class members, the relief requested herein with respect to this Fourth Cause of Action.

126.     Plaintiffs repeat and reallege each preceding paragraph of this Complaint as if fully set forth herein.

127.     Plaintiff Nguyen, Plaintiff Brewster, and Plaintiff Strickenberger bring this claim on behalf of themselves, the California Class, the Illinois Class, and the multistate Student Loan Borrower Bill of Rights State Class under the state Student Loan Borrower Bills of Rights, which are materially uniform in the states of California, Colorado, Connecticut, Illinois, Maryland, Maine, New Jersey, New York, Rhode Island, Virginia, and Washington State.

128.     These eleven states have enacted the following Student Loan Borrower Bills of Rights, all of which are materially similar and were designed to effectuate the states' public policy against Pay-to-Pay Fees:

a.      California prohibits any "person" from engaging in "abusive acts or practices when servicing a student loan," including taking unreasonable advantage of a borrower's lack of understanding of the costs or conditions of their student loan or their reliance on a loan servicer's duty to act in the interests of the borrower. Cal. Civ. Code § 1788.101(a). It further prohibits student loan servicers from "misrepresent[ing] or omit[ting] material information in connection with the servicing of a student loan," including, as relevant here, "misrepresenting the amount, nature, or terms of a fee or payment due or claimed to be due on a student loan, the terms and conditions of the student loan agreement, or the borrower's obligations under the student loan." *Id.* § 1788.101(b)

b.      Colorado prohibits student loan servicers from engaging in "unfair or deceptive practice[s] toward" borrowers or misrepresenting or omitting "any material information in connection with the servicing of a student education loan, including misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement, or the student loan borrower's obligations under the loan." Colo. Rev. Stat. § 5-20-109(b).

c.      Connecticut prohibits student loan servicers from engaging in "any unfair or deceptive practice toward any person or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement or the borrower's obligations under the loan." Conn. Gen. Stat. § 36a-850(2).

d. Illinois prohibits student loan servicers from engaging in "any unfair or deceptive practice toward any borrower or cosigner or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a student loan, including, but not limited to, misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a student loan, the terms and conditions of the student loan agreement, or the borrower's or cosigner's obligations under the student loan or the terms of any repayment plans." 110 Ill. Comp. Stat. 992/5-5(a).

e. Maine forbids a student loan servicer from engaging in "any unfair or deceptive practice toward" any student borrower or misrepresenting or omitting "any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement or the borrower's obligations under the loan." Me. Stat. tit. 9-A, § 14-108(3)(B).

f. Maryland forbids a student loan servicer from misrepresenting or omitting "material information in connection with the servicing of a student education loan," including, as relevant here, "[a]ny fee owed by a student loan borrower," "[t]he terms and conditions of the student education loan," or "[t]he student loan borrower's obligations under the student education loan"; or by otherwise obtaining property from a borrower "by misrepresentation of fact or omission of material fact." Md. Code Ann., Educ. § 26-602(3)–(4).

g. New Jersey prohibits student loan servicers from engaging in "any unfair or deceptive practice" toward any student borrower or misrepresenting or omitting

"any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement or the borrower's obligations under the loan." N.J. Stat. Ann. § 17:16ZZ-9(b).

        h.      New York forbids student loan servicers from committing "any unfair, deceptive or predatory act or practice" toward student loan borrowers or misrepresenting or omitting "any material information in connection with the servicing of a student loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a student loan, the terms and conditions of the loan agreement or the borrower's obligations under the loan." N.Y. Banking Law § 719(b).

        i.      Rhode Island prohibits student loan servicers from engaging in "any unfair or deceptive practice" toward any student loan borrower or misrepresenting or omitting "any material information in connection with the servicing of a student education loan, including, but not limited to, misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement, or the borrower's obligations under the loan." 19 R.I. Gen. Laws Ann. § 19-33-12(2).

        j.      Virginia forbids student loan servicers from engaging in "any unfair or deceptive act or practice toward any person or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a qualified education loan, including misrepresenting (i) the amount, nature, or terms of any fee or payment due or

-39-

claimed to be due on a qualified education loan; (ii) the terms and conditions of the loan agreement; or (iii) the borrower's obligations under the loan." Va. Code Ann. § 6.2-2610(A)(2). It further prohibits student loan servicers from engaging in "abusive acts or practices when servicing a qualified education loan," including taking unreasonable advantage of a borrower's lack of understanding of the "costs[] or conditions of the qualified education loan" or the borrower's reasonable reliance on the servicer's duty to act in the interests of the borrower." *Id.* § 6.2-2610(C).

           k.      Washington prohibits student loan servicers from "[m]isrepresent[ing] or omit[ting] any material information in connection with the servicing of a student education loan including, but not limited to, misrepresenting the amount, nature, conditions, or terms of any fee or payment due or claimed to be due on a student education loan, the terms and conditions of the loan agreement, . . . or the borrower's obligations under the loan." Wash. Rev. Code § 31.04.027(2)(b).

129.    To summarize, these Student Loan Borrower Bills of Rights (collectively, the "Bills"), each prohibit a student loan servicer (which ECSI qualifies as under each state's statute) from engaging in unfair, deceptive, or otherwise abusive acts or practices toward student loan borrowers like Plaintiffs and the Class members, including (1) taking unreasonable advantage of borrowers' lack of understanding of the costs or conditions of their student loans or their reliance on a loan servicer's duty to act in their best interests; (2) misrepresenting or omitting material information regarding the nature or terms of fees or payments due on borrowers' student loans; (3) misrepresenting or omitting material information regarding the terms and conditions of borrowers' loan agreements; and (4) misrepresenting or omitting material information regarding borrowers' obligations under their student loans.

130.    Plaintiff Nguyen, Plaintiff Brewster, and members of the California Class are "borrowers," as that term is defined in California. *See* Cal. Civ. Code § 1788.100(a). Plaintiff Strickenberger and members of the Illinois Class are "borrowers," as that term is defined in 110 Ill. Comp. Stat. 992/1-5. The members of the Student Loan Borrower Bill of Rights State Class are all borrowers of student loans obtained for educational purposes and are covered under the statutory schemes of the Bills set forth above.

131.    ECSI is both a "person" and a "student loan servicer," as those terms are defined in California. *See* Cal. Civ. Code § 1788.100 (m) and (s). ECSI is a "Student loan servicer" or "servicer," as those terms are defined in 110 Ill. Comp. Stat. 992/1-5. ECSI is a collector and servicer of student loan debt under all the Bills identified above.

132.    By assessing Pay-to-Pay Fees against borrowers for making online or phone payments, ECSI violated the prohibitions of the Bills identified above. Plaintiffs' and Class members' standardized federal Perkins loan agreements do not authorize the "processing" or "convenience" fees that ECSI assessed when a borrower makes an online or telephone payment via credit card, debit card, or non-recurring ACH transfer. But by assessing these Pay-to-Pay Fees, ECSI represented that the student loan debts of Plaintiffs and Class members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation and are not authorized by their standardized federal Perkins loan agreements.

133.    ECSI likewise omitted that these Pay-to-Pay Fees are not authorized by law or borrowers' Perkins loan agreements and that it was receiving excessive profits from the assessment of the Pay-to-Pay Fees.

134.    ECSI knew that these Pay-to-Pay Fees were not expressly set out in Plaintiffs' or Class members' Perkins loan agreements, yet it collected them anyway.

135.    This conduct also took unreasonable advantage of borrowers' lack of knowledge regarding the costs or conditions of their loan agreements, which did not include the assessment of unlawful Pay-to-Pay Fees.

136.    ECSI's assessment of Pay-to-Pay Fees also took unfair advantage of borrowers' reasonable reliance on ECSI's duty to act in borrowers' best interests. The Pay-to-Pay Fees assessed by ECSI (1) are unlawful, (2) are not authorized by borrowers' Perkins loan agreements, (3) constitute double-payment to ECSI because ECSI already negotiated fees to cover the cost of servicing borrowers' student loans in its service contracts with universities, (4) far exceed the costs that ECSI incurs in processing borrowers' loan payments, and (5) furnish no benefit to borrowers and instead serve only as an additional profit center for ECSI. This is the antithesis of acting in the best interests of borrowers.

137.    The above-described conduct thus violated the Student Loan Borrower Bills of Rights of the states listed above.

138.    Plaintiffs and the members of the California, Illinois, and Student Loan Borrower Bill of Rights State Classes were harmed when ECSI violated the Student Loan Borrower Bills of Rights of the states listed above through the above-described conduct.

139.    As a result of each and every violation of the above-listed Student Loan Borrower Bills of Rights, Plaintiffs and the California, Illinois, and Student Loan Borrower Bill of Rights State Class members are entitled to the following:

> a.    California (effective January 15, 2023): Actual damages or $500 per plaintiff, per violation, whichever is greater, treble damages, punitive damages to the full extent provided by law, restitution of property, and reasonable attorneys' fees under Cal. Civ. Code § 1788.103;

b.      Colorado: Actual and treble damages, punitive damages to the full extent provided by law, and reasonable attorneys' fees and costs under Colo. Rev. Stat. § 5-20-112;

c.      Connecticut: Actual damages, treble damages, punitive damages to the full extent provided by law, restitution of property, and reasonable attorneys' fees and costs under Conn. Gen. Stat. § 36a-855;

d.      Illinois: Actual damages, punitive damages to the full extent provided by law, and reasonable costs and attorneys' fees under 815 Ill. Comp. Stat. 505/10a;

e.      Maine (effective December 31, 2022): Actual damages, treble damages, punitive damages to the full extent provided by law, reasonable attorneys' fees and costs under Me. Stat. tit. 9-A, § 14-108(4)(A) and Me. Stat. tit. 5, § 213(1-A).

f.      Maryland: Damages and reasonable attorneys' fees under Md. Code Ann., Com. Law § 13-408;

g.      New Jersey: Actual damages, treble damages, and reasonable attorneys' fees and costs under N.J. Stat. Ann. § 17:16ZZ-12;

h.      New York: Actual damages or statutory damages of $50, whichever is greater, treble damages, and reasonable attorneys' fees and costs under N.Y. Gen. Bus. Law § 349(h);

i.      Rhode Island: Actual damages or statutory damages of $500, whichever is greater, treble damages, and reasonable attorneys' fees and costs under 19 R.I. Gen. Laws Ann. § 19-33-14 and 6 R.I. Gen. Laws Ann. § 6-13.1-5.2;

      j.     Virginia: Actual damages or statutory damages of $500 per violation, whichever is greater, treble damages, punitive damages to the full extent provided by law, restitution of property, and reasonable attorneys' fees under Va. Code Ann. § 6.2-2619;

      k.     Washington: Actual damages, treble damages, and reasonable attorneys' fees and costs under Wash. Rev. Code § 19.86.090.

140.    Through its unlawful acts and practices, ECSI has improperly obtained money from Plaintiffs and the members of the California, Illinois, and Student Loan Borrower Bill of Rights Classes. As such, Plaintiffs request that the Court order ECSI to restore the money to Plaintiffs and the California, Illinois, and Student Loan Borrower Bill of Rights Classes and enjoin ECSI from continuing to violate the materially uniform state Student Loan Borrower Bills of Rights. Plaintiffs' Perkins loans continue to be serviced by ECSI, and they intend to make student loan payments online in the future. Absent an injunction, Plaintiffs and the California, Illinois, and multistate Student Loan Borrower Bill of Rights Class members may be irreparably harmed and/or denied an effective and complete remedy.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**On Behalf of Plaintiff Nguyen, Plaintiff Brewster, and the California Class**

141.    Plaintiffs repeat and reallege each preceding paragraph of this Complaint as if fully set forth herein.

142.    Plaintiff Nguyen and Plaintiff Brewster plead this cause of action in the alternative, to the extent this claim must be pleaded in the alternative to the previous Causes of Action asserted above.

143.     The UCL defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

**Unlawful Prong**

144.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

145.     ECSI's conduct violates sections 1788.13, 1788.14, and 1788.17 of the Rosenthal Act and the California Student Borrower Bill of Rights. These violations are sufficient to support Plaintiff Nguyen's, Plaintiff Brewster's, and the California Class's claim under the unlawful prong of the UCL.

146.     The Rosenthal Act applies to ECSI because it regularly engages in debt collection as defined by the statute. *See* Cal. Civ. Code § 1788.2.

147.     ECSI knew that the Pay-to-Pay Fees were not expressly set out in the Perkins loan MPNs of the other California Class members, yet it collected them anyway.

148.     Section 1788.13 of the Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." *Id.* § 1788.13(e).

149.     By assessing Pay-to-Pay Fees, ECSI represented that the student loan debts of Plaintiff Nguyen, Plaintiff Brewster, and the California Class members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

150.     This conduct violated section 1788.13 of the Rosenthal Act.

151.     The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other

expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." *Id.* § 1788.14.

152.    When ECSI collected Pay-to-Pay Fees from Plaintiff Nguyen, Plaintiff Brewster, and the California Class members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated section 1788.14 of the Rosenthal Act.

153.    Further, section 1788.17 of the Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to engage in conduct prohibited by the federal FDCPA. Cal. Civ. Code § 1788.17. By engaging in such prohibited conduct, ECSI violated section 1788.17 of the Rosenthal Act.

154.    The FDCPA prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

155.    The Perkins loan agreements of Plaintiff Nguyen, Plaintiff Brewster, and the California Class members do not expressly authorize ECSI to collect Pay-to-Pay Fees. At most, the agreements permit ECSI to collect the actual amount it pays to process payments from borrowers.

156.    Although the Perkins loan agreements of Plaintiff Nguyen, Plaintiff Brewster, and the California Class members do not expressly authorize collection of Pay-to-Pay Fees, ECSI collected such fees anyway.

157.     In so doing, ECSI collected amounts not authorized by Plaintiff Nguyen, Plaintiff Brewster, and Class members' Perkins loan agreements, a practice prohibited by the Rosenthal Act, which incorporates Section 1692f of the FDCPA.

158.     ECSI also violated the California Student Borrower Bill of Rights, which prohibits any person from engaging in "abusive acts or practices when servicing a student loan" in California, including but not limited to—as relevant here—taking unreasonable advantage of a borrower's lack of understanding of the costs or conditions of their student loan or their reliance on a loan servicer's duty to act in the interests of the borrower. Cal. Civ. Code § 1788.101(a). It further prohibits student loan servicers from "misrepresent[ing] or omit[ting] material information in connection with the servicing of a student loan," including, as relevant here, "misrepresenting the amount, nature, or terms of a fee or payment due or claimed to be due on a student loan, the terms and conditions of the student loan agreement, or the borrower's obligations under the student loan." *Id.* § 1788.101(b).

159.     By assessing Pay-to-Pay Fees against borrowers for making online or phone payments, ECSI violated each of these prohibitions. Plaintiff Nguyen's, Plaintiff Brewster's, and Class members' standardized federal Perkins loan agreements do not expressly authorize the "processing" or "convenience" fees that ECSI assessed when a borrower makes an online or telephone payment via credit card, debit card, or non-recurring ACH transfer. But by assessing these Pay-to-Pay Fees, ECSI represented that the student loan debts of Plaintiff Nguyen, Plaintiff Brewster, and the California Class members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation and are not authorized by their Perkins loan agreements.

160.   ECSI likewise omitted that these Pay-to-Pay Fees are not authorized by law or borrowers' Perkins loan agreements.

161.   This conduct also took unreasonable advantage of borrowers' lack of knowledge regarding the costs or conditions of their loan agreements, which did not include the assessment of unlawful Pay-to-Pay Fees.

162.   ECSI's assessment of Pay-to-Pay Fees also took unfair advantage of borrowers' reasonable reliance on ECSI's duty to act in borrowers' best interests. The Pay-to-Pay Fees assessed by ECSI (1) are unlawful, (2) are not authorized by borrowers' Perkins loan agreements, (3) constitute double-payment to ECSI because ECSI already negotiated fees to cover the cost of servicing borrowers' student loans in its service contracts with universities, (4) far exceed the costs that ECSI incurs in processing borrowers' loan payments, and (5) furnish no benefit to borrowers and instead serve only as an additional profit center for ECSI. This is the antithesis of acting in the best interests of borrowers.

163.    ECSI therefore violated the California Student Borrower Bill of Rights.

164.   As a result of the above conduct, Plaintiff Nguyen, Plaintiff Brewster, and the California Class have suffered economic injury, and ECSI has been unjustly enriched at their expense. ECSI has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

165.   Through its unlawful acts and practices, ECSI has improperly obtained money from Plaintiff Nguyen, Plaintiff Brewster, and the members of the California Class. As such, Plaintiff Nguyen requests that the Court order ECSI to restore the money to Plaintiff Nguyen, Plaintiff Brewster, and the California Class and enjoin ECSI from continuing to violate the Rosenthal Act, FDCPA, and UCL. Plaintiff Nguyen's and Plaintiff Brewster's Perkins loans continue to be

serviced by ECSI, and they intend to make student loan payments online in the future. Absent an injunction, Plaintiff Nguyen, Plaintiff Brewster, and the California Class members may be irreparably harmed and/or denied an effective and complete remedy.

## Unfair Prong

166.    In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

167.    ECSI's actions constitute "unfair" business practices because, as alleged above, ECSI engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging Pay-to-Pay Fees not authorized by the Perkins loan agreements or applicable law. ECSI's unfair practice is substantially injurious to consumers, who were and are forced to pay a "processing" or "convenience" fee each time they wished to make payments by phone or online. Because ECSI charged fees well above the actual cost of providing online and phone payment services, there are no countervailing benefits to consumers or competition that outweigh the injuries suffered by Plaintiff Nguyen, Plaintiff Brewster, and the California Class.

168.    ECSI's actions also violate established federal and California public policy disfavoring Pay-to-Pay Fees. This policy is reflected in, among other things, CFPB statements and advisory opinions, Congress's prohibition in the FDCPA on debt collectors assessing Pay-to-Pay Fees, the statement by a coalition of state attorneys general, which included California, California's Rosenthal Act and materially uniform state fee-prohibiting statutes, and California's Student Borrower Bill of Rights and materially uniform state Student Loan Borrower Bills of Rights.

169.     As a result of the above conduct, Plaintiff Nguyen and Plaintiff Brewster have suffered economic injury, and ECSI has been unjustly enriched at the expense of Plaintiff Nguyen, Plaintiff Brewster, and members of the California Class. ECSI has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

170.     Through its unlawful acts and practices, ECSI has improperly obtained money from Plaintiff Nguyen, Plaintiff Brewster, and the California Class members. As such, Plaintiff Nguyen and Plaintiff Brewster request that the Court order ECSI to restore the money to them and the California Class and enjoin ECSI from continuing to violate the UCL in the future. Plaintiff Nguyen's and Plaintiff Brewster's Perkins loan continue to be serviced by ECSI, and they intend to make loan payments online in the future. Absent an injunction, Plaintiff Nguyen, Plaintiff Brewster, and the California Class members may be irreparably harmed and/or denied an effective and complete remedy.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (On Behalf of Plaintiff Strickenberger and the Illinois Class)

171.     Plaintiffs repeat and reallege each preceding paragraph of this Complaint as if fully set forth herein.

172.     Plaintiff Strickenberger pleads this cause of action in the alternative, to the extent this claim must be pleaded in the alternative to the previous Causes of Action asserted above.

173.     The ICFA prohibits "unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2.

174.     An act or practice is "unfair" if it offends public policy, if it is immoral, unethical, oppressive, or unscrupulous, or if it causes substantial injury to consumers.

175.     ECSI's actions constitute "unfair" business practices because, as alleged above, they offend established federal and Illinois public policy. A practice offends public policy under ICFA where it violates statutory or administrative rules establishing a certain standard of conduct.

176.     ECSI's actions violate Illinois public policy, as set out in the State's statutory standards of conduct prohibiting the imposition of processing fees not authorized by Plaintiff Strickenberger's and Illinois Class members' Perkins loan agreements. First, Illinois law prohibits a "collection agency" (ECSI qualifies as a "collection agency" as that term is defined in 225 Ill. Comp. Stat. 425/2) from "add[ing] to the debt any service charge . . . which he, she, or it is not entitled by law to add" while attempting to collect an alleged debt. 720 Ill. Comp. Stat. 5/17-5(c).

177.     Second, Illinois law authorizes disciplinary proceedings against a "collection agency" for "[c]ollecting or attempting to collect any interest or other charge or fee in excess of the actual debt unless such interest or other charge or fee is expressly authorized by the agreement creating the debt unless expressly authorized by law or unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement." 225 Ill. Comp. Stat. 425/9(a)(33).

178.     Third, Illinois prohibits student loan servicers from engaging in "any unfair or deceptive practice toward any borrower or cosigner or misrepresent[ing] or omit[ting] any material information in connection with the servicing of a student loan, including, but not limited to, misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a student loan, the terms and conditions of the student loan agreement, or the borrower's or cosigner's obligations under the student loan or the terms of any repayment plans." 110 Ill. Comp. Stat. 992/5-5(a).

179.   ECSI is neither entitled by law to add nor expressly authorized by Plaintiff Strickenberger's and Illinois Class members' Perkins loan agreements to collect Pay-to-Pay Fees.

180.   Further, ECSI violated the public policy articulated in the Illinois Student Loan Servicing Rights Act by misrepresenting and omitting material information in connection with its servicing of borrowers' obligations under their Perkins loan agreements. By assessing Pay-to-Pay Fees, ECSI represented that the student loan debts of Plaintiff Strickenberger's and Illinois Class members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation and are not authorized by their standardized federal Perkins loan agreements. ECSI likewise omitted that these Pay-to-Pay Fees are not authorized by law or borrowers' Perkins loan agreements and that it was receiving excessive profits from the assessment of the Pay-to-Pay Fees.

181.   ECSI's actions also violate established federal public policy disfavoring Pay-to-Pay Fees. This policy is reflected in, among other things, CFPB statements and advisory opinions and Congress's prohibition in the FDCPA on debt collectors assessing Pay-to-Pay Fees.

182.   Further, ECSI engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging Pay-to-Pay Fees not authorized by the Perkins loan agreements or applicable law. Under the ICFA, conduct is oppressive when it leaves a consumer with little alternative except to submit to it, and the consumer cannot avoid the defendant's practice by seeking an alternative elsewhere. ECSI's conduct is oppressive because borrowers cannot choose another student loan servicer or shop around for a better deal to avoid ECSI's imposition of unlawful Pay-to-Pay Fees. And as set forth in Paragraph 28, payment via mail or ACH is impractical. Borrowers are forced to have ECSI as their loan servicer as a result of the unilateral decision of their educational institution.

183.     Moreover, ECSI's unfair practice is substantially injurious to consumers, who were and are forced to pay a "processing" or "convenience" fee each time they make payments by phone or online. Because ECSI charged fees well above the actual cost of providing online and phone payment services, there are no countervailing benefits to consumers or competition that outweigh the injuries suffered by Plaintiff Strickenberger and the Illinois Class.

184.     As a result of the above conduct, Plaintiff Strickenberger and Illinois Class members have suffered actual economic damages in the form of unlawful Pay-to-Pay Fees that they should not have been required to pay. As such, Plaintiff Strickenberger requests that the Court award actual and punitive damages to the full extent provided by law, enjoin ECSI from continuing to violate the ICFA in the future, and any other relief which the Court deems proper pursuant to 815 Ill. Comp. Stat. 505/10a.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against ECSI as follows:

A.     Certification of the Classes pursuant to Federal Rule of Civil Procedure 23, certifying Plaintiffs as the representatives of the Classes, and designating their counsel as counsel for the Classes;

B.     Actual and compensatory damages for injuries suffered by Plaintiffs and Class members;

C.     Awarding Plaintiffs and Class members statutory, treble, and punitive damages where permitted;

D.     Awarding Plaintiffs and Class members restitution and disgorgement where permitted;

E.      Injunctive relief where permitted, including, but not limited to, removal of charges incurred by Plaintiffs and Class members for the Pay-to-Pay Fees;

F.      Reasonable attorneys' fees and costs of this action and pre-judgment interest, including pursuant to Cal. Civ. Proc. Code § 1021.5, Cal. Civ. Code § 1788.30(c), Colo. Rev. Stat. Ann. § 5-20-112(2)(d), Conn. Gen. Stat. § 36a-855(a), 815 Ill. Comp. Stat. 505/10a(c), Iowa Code § 537.5201(8), Me. Stat. tit. 9-A, § 14-108(4)(A), Me. Stat. tit. 5, § 213(1-A), Md. Code Ann., Com. Law § 13-408(b), N.H. Rev. Stat. Ann. § 358-C:4(I)(a), N.J. Stat. Ann. § 17:16ZZ-12, N.Y. Gen. Bus. Law § 349(h), Or. Rev. Stat. § 646.641(2), 73 Pa. Cons. Stat. § 201-9.2(a), 6 R.I. Gen. Laws Ann. § 6-13.1-5.2(d), Tex. Fin. Code Ann. § 392.403(c), W. Va. Code § 46A-5-104, Va. Code Ann. § 6.2-2619(a)(5)-(6), and Wash. Rev. Code § 19.86.090; and

G.      Such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs and Classes demand a trial by jury on all issues so triable.


Dated December 6, 2022.

                                    */s/ Patricia M. Kipnis*
                                    Patricia M. Kipnis (PA 91470)
                                    **BAILEY & GLASSER LLP**
                                    1622 Locust Street
                                    Philadelphia, PA 19102
                                    Telephone: (215) 274-9331
                                    Email: pkipnis@baileyglasser.com

                                    James L. Kauffman (DC 1020720)
                                    (*pro hac vice forthcoming*)
                                    **BAILEY & GLASSER LLP**

1055 Thomas Jefferson Street NW,
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: jkauffman@baileyglasser.com

Kristen G. Simplicio (DC 977556)
(*pro hac vice forthcoming*)
Hassan A. Zavareei (DC 456161)
(*pro hac vice forth coming*)
Glenn E. Chappell (DC 1708506)
(*pro hac vice forthcoming*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: ksimplicio@tzlegal.com
          hzavareei@tzlegal.com
          gchappell@tzlegal.com

***Counsel for Plaintiffs and Proposed Class
Counsel***