## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REBECCA NGUYEN, TAMICA BREWSTER, KYLE STRICKENBERGER**, and **MICHELLE CAYNOR** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**EDUCATIONAL COMPUTER SYSTEMS, INC., d/b/a HEARTLAND ECSI**,<br><br>Defendant. | Case No. 2:22-cv-01743-PLD<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Patricia L. Dodge |

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ......................................................................................................1

II.     CASE BACKGROUND .............................................................................................2

III.    SUMMARY OF SETTLEMENT TERMS ................................................................4

IV.     ARGUMENT .............................................................................................................5

      A.    The settlement is fair, reasonable, and appropriate. .......................................5

            1.    Arms'-Length Negotiations Between Experienced and Informed Counsel Warrants a Presumption of Fairness. .......................................................6

            2.    The Settlement Agreement Contains Other Hallmarks of Fairness..................9

V.      The proposed form and method of class notice satisfy due process .........................14

      A.    The Settlement Class meets all of Rule 23's requirements for conditional certification. .............................................................................................17

            1.    Numerosity ...........................................................................................17

            2.    Commonality .........................................................................................17

            3.    Typicality .............................................................................................18

            4.    Adequacy of Representation ..................................................................19

            5.    Rule 23(b) Factors ...............................................................................20

VI.     CONCLUSION ........................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ..................................................................................................... 15, 20, 22

*Baby Neal v. Casey,*
  43 F.3d 48 (3d Cir. 1994) ........................................................................................................ 19

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) ....................................................................................................... 9

*In re Cmty. Bank of No. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,*
  418 F.3d 277 (3d Cir. 2005) ............................................................................................... 7, 9, 21

*Cole's Wexford Hotel, Inc. v. UPMC,*
  No. 2:10-CV-01609-JFC, 2016 WL 6919776 (W.D. Pa. July 29, 2016) ............................ 20

*Cottillion v. United Ref. Co.,*
  No. CIV.A. 09-140E, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013) .................................... 17

*Douglass v. Optavia LLC,*
  No. 2:22-CV-00594-CCW, 2022 WL 4281546 (W.D. Pa. Sept. 14, 2022) ....................... 8, 9

*Eisen v. Carlisle & Jacqueline,*
  417 U.S. 156 (1974) ................................................................................................................. 15

*Gates v. Rohm & Haas Co.,*
  248 F.R.D. 434 (E.D. Pa. 2008) ................................................................................................ 6

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.,*
  55 F.3d 768 (3d Cir. 1995) ........................................................................................... 5, 6, 7, 9

*Georgine v. Amchem Prods., Inc.,*
  83 F.3d 610 (3d Cir. 1996) ...................................................................................................... 19

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2008) .................................................................................................... 20

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
  194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................................. 14

*Klingensmith v. BP Prod. N. Am., Inc.,*
  No. CIV.A. 07-1065, 2008 WL 4360965 (W.D. Pa. Sept. 24, 2008) ..................................... 9

*Lazy Oil Co. v. Wotco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................................................................12

*Lindblom v. Santander Consumer USA, Inc.*,
    No. 1:15-CV-990-LJO-BAM, 2016 WL 2841495 (E.D. Cal. May 9, 2016) ....................................21

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012) .......................................................................9

*Maywalt v. Parker and Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ......................................................................15

*McDonough v. Toys R Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) ...............................................................11

*Montesi v. Seterus, Inc.*,
    No. 2015 CA010910 (Apr. 27, 2019, Palm Beach County, FL) ......................................21

*Murphy v. Le Sportsac, Inc.*,
    No. 1:22-CV-00058-RAL, 2023 WL 375903 (W.D. Pa. Jan. 24, 2023)...............................12

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...................................................................7, 8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ....................................................................18

*Nichols v. SmithKline Beecham Corp.*,
    No. Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ...................................11

*Pfeifer v. Wawa, Inc.*,
    No. CV 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) .......................................11

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    No. 3:03-MDL-1556, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) ...................................21

*In re Ravisent Techs., Inc. Secs. Litig.*,
    No. Civ. A. 00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...............................11

*Reinig v. RBS Citizens, N.A.*,
    No. 2:15-CV-01042-AJS, 2017 WL 8941219 (W.D. Pa. Aug. 2, 2017) ...............................19

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
    No. 2:18-CV-1370, 2020 WL 3481458 (W.D. Pa. June 26, 2020) ...................................11

*Sanders v. LoanCare, LLC*,
    No. 2:18-CV-09376, 2019 WL 12340195 (C.D. Cal. Sept. 16, 2019) ...............................21

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ..................................................................................17

*Sullivan v. D.B. Inv., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ....................................................................................5

*Teh Shou Kao v. CardConnect Corp.*,
  No. 16-CV-5707, 2021 WL 698173 (E.D. Pa. Feb. 23, 2021) ............................11

*Torliatt v. Ocwen Loan Servicing, LLC*,
  No. 19-CV-04303-WHO, 2021 WL 5230755 (N.D. Cal. Nov. 8, 2021) ..............21

*Torres v. BrandSafway Indus. LLC*,
  No. 2:21-CV-01771-CCW, 2023 WL 346667 (W.D. Pa. Jan. 20, 2023) ................6

*Walker v. Highmark BCBSD Health Options, Inc.*,
  No. 2:20-CV-01975-CCW, 2022 WL 17592067 (W.D. Pa. Dec. 13, 2022) ...........6

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ................................................................6, 17, 19, 22

*Weiss v. Mercedes Benz of N. Am.*,
  899 F. Supp. 1297 (D.N.J. 1995).........................................................................12

*Williams v. Lakeview Loan Servicing LLC*,
  No. 4:20-CV-01900, 2022 WL 950875 (S.D. Tex. Mar. 30, 2022).....................21

**Statutes**

815 ILCS 505/1, *et seq.* ..............................................................................................4

815 ILCS 505/2.............................................................................................................4

15 U.S.C. 1692f(1)........................................................................................................3

Cal. Bus. & Prof. Code § 17200.................................................................................3, 4

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................5, 17

Fed. R. Civ. P. 23(a).....................................................................................................17

Fed. R. Civ. P. 23(a)(1)................................................................................................17

Fed. R. Civ. P. 23(a)(2)................................................................................................17

Fed. R. Civ. P. 23(a)(4)................................................................................................19

Fed. R. Civ. P. 23(b).....................................................................................................20

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 15, 20, 22

Fed. R. Civ. P. 23(b)(3)(A-D) ....................................................................................... 22

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 15

Fed. R. Civ. P. 23(c)(3) ................................................................................................. 15

Fed. R. Civ. P. 23(e) ..................................................................................................... 1, 5

Fed. R. Civ. P. 23(e)(1) ................................................................................................. 14

Fed. R. Civ. P. 23(f) ...................................................................................................... 14

**Other Authorities**

*Manual For Complex Litig.* (4th ed. 2011) ................................................................ 14

*Newberg on Class Actions* ........................................................................................... 7, 20

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Rebecca Nguyen, Tamica Brewster, Kyle Strickenberger, and Michelle Caynor hereby move for preliminary approval of the Settlement Agreement they and Defendant Educational Computer Systems, Inc. ("ECSI") have reached to resolve this case on a class wide basis. This proposed class action lawsuit arises from ECSI's assessment of certain fees to process student borrowers' Perkins loan payments. Plaintiffs and ECSI have agreed on a settlement that provides for a $3.65 million common fund ("Settlement Fund") that will be distributed on a *pro rata* basis to Perkins borrowers who submit a claim. There is no reversion; the full net amount of the fund after expenses and attorneys' fees will be distributed to members of the proposed settlement class. The settlement also provides for services awards for the named Plaintiffs and an award of attorneys' fees not to exceed one third of the Settlement Fund.

The proposed settlement is fair, reasonable, and appropriate, and it provides robust relief for the affected student borrowers. It was negotiated at arm's length over the course of a year with the assistance of a retired federal judge serving as a neutral mediator, it is the product of an extensive investigation of the relative strengths and weaknesses by counsel experienced in both consumer class actions and cases involving servicing and/or processing fees like those at issue here, and it is well within the range of reasonableness. Moreover, it creates a notice program designed to reach every class members by employing email and traditional mail notice. And it provides for claim payments using modern payment methods popularly used by members of the class's age group, rather than expensive and unlikely to be cashed paper checks. Put simply, the agreement is carefully tailored to maximize relief to class members while controlling for the risks of litigation and the expense of notice and claims administration.

Because the agreement meets all the requirements for preliminary approval, Plaintiffs request that the Court enter the Proposed Preliminary Approval Order attached to this motion, which will:

(1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class; (3) appoint Class Counsel; (4) appoint Plaintiffs as Class representatives; and (5) set the Parties' proposed schedule for notice, claims, final approval, and other matters.

## II.    CASE BACKGROUND

ECSI is a servicer of student loans, including federal Perkins loans, which are offered by educational institutions and funded in whole or in part by federal government dollars. D.E. 1 (Class Action Complaint) ¶ 2. If a student borrower elects to make a one-time payment on their Perkins loan over the phone or online, ECSI charges a "processing" or "convenience" fee (hereinafter, "Processing Fee[s]"). *Id.* ¶ 23. ECSI does not charge a Processing Fee if the borrower sets up recurring (automatic) ACH (bank-to-bank) payments from the borrower's checking or savings account. *Id.* ¶ 24. Plaintiffs allege that ECSI assessed Processing Fees when they made payments on their Perkins loans. *Id.* ¶¶ 39-53.

Plaintiffs claim Perkins loans are governed by a standardized federal Master Promissory Note ("MPN") that does not expressly authorize the assessment of Processing Fees when a student makes a payment on their loans. *Id.* ¶ 52. As described below in greater detail, Plaintiffs allege that these Processing Fees are illegal "pay-to-pay" fees that breach ECSI's contractual duty of good faith and fair dealing and run afoul of debt-collection, consumer-protection, and student borrower bill-of-rights statutes in numerous states, in addition to well-established federal and state public policy.

Three of the four Plaintiffs filed this case on December 6, 2022. Their complaint sought to represent five classes of consumers, all of whom are Perkins loan borrowers: a nationwide class, a multistate class comprised of borrowers in states with materially uniform debt-collection statutes, a multistate class of borrowers in states with materially uniform student borrower statutes, a California class, and an Illinois class. *Id.* ¶¶ 75-79. After filing, Plaintiffs' counsel was retained by a fourth Plaintiff, Michelle Caynor of West Virginia. In connection with this Settlement, Ms. Caynor has been added to

the action, and an amended complaint has been filed. D.E. 59. Below is a summary of Plaintiffs' legal theories.

*Duty of good faith and fair dealing.* On behalf of the proposed nationwide class, Plaintiffs allege that ECSI, which as a servicer obtained contractual rights and responsibilities under the MPN contracts via assignment, violated the implied covenant of good faith and fair dealing embedded in every contract when it charged the Processing Fees. *Id.* ¶¶ 98-106.

*State debt-collection ("1692f") statutes.* The complaint asserts claims on behalf of borrowers in eight states for violating those states' materially uniform debt-collection statutes. *Id.* ¶¶ 107-15. Plaintiffs allege that ECSI's Processing Fees violate these states' prohibition on the collection of fees via common statutory language that borrows from Section 1692f(1) of the federal Fair Debt Collection Practices Act (FDCPA). *See id.* Plaintiffs claim that section, and the eight state laws adopting it, all prohibit "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1).

*State student borrower statutes.* Plaintiffs also brought claims on behalf of borrowers in eleven states for violating student borrower statutes. D.E. 1 ¶¶ 124-40. Plaintiffs contend these statutes each prohibit a student loan servicer from engaging in unfair, deceptive, or otherwise abusive acts or practices toward student loan borrowers, including taking unreasonable advantage of borrowers' lack of understanding of the costs or conditions of their student loans or their reliance on a loan servicer's duty to act in their best interests. *See id.* Plaintiffs claim they also prohibit servicers from misrepresenting or omitting material information regarding the nature or terms of fees or payments due; other terms and conditions of borrowers' loan agreements; and borrowers' obligations. *See id.*

*State consumer-protection statutes.* The complaint also asserts claims on behalf of borrowers in their home states of California and Illinois pursuant to California's Unfair Competition Law (UCL) and

Illinois's Consumer Fraud and Deceptive Practices Act (CFA), both of which prohibit unfair conduct. Cal. Bus. & Prof. Code § 17200; 815 Ill. Comp. Stat. 505/2. The complaint alleges that ECSI's assessment of Processing Fees violates the "unfair" prong of these consumer-protection statutes because such Processing Fees violate well-established state and federal public policy, which is codified in a variety of statutes and pronouncements, including the above-discussed state "1692f" and student borrower bill-of-rights statutes and numerous pronouncements by state attorneys general and the Federal Trade Commission. D.E. 1 ¶¶ 141-84.

ECSI denies any wrongdoing and maintains that its fee-collection practices do not violate these laws and duties. ECSI also contends it has a variety of other potential defenses to these claims.

Shortly after Plaintiffs filed their complaint, the parties began to discuss a potential resolution, and they accordingly agreed to a series of extensions on the deadline for ECSI to file its response to the complaint. D.E. 12, 26, 30, 33, 35, 37, 39, 44, 46. The Court granted the extensions to allow the parties to continue their discussions. D.E. 27, 32, 34, 36, 38, 41, 45, 47. While the case deadlines were stayed, the parties engaged in extensive arms' length discussions, exchange of documents, and confirmatory discovery that spanned nearly one year. In August 2023, the parties held a private mediation with Hon. Lawrence F. Stengel (Ret.), who previously served as a judge in the Eastern District of Pennsylvania. Declaration of Kristen G. Simplicio ("Simplicio Decl."), ¶ 5. The settlement agreement proposed herein is the culmination of this vigorous negotiation process.

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement Fund of $3.65 million dollars represents 25% of the amount collected in Processing Fees from approximately 552,293 Perkins loans borrowers by ECSI between December 6, 2018 and October 31, 2023. Simplicio Decl. ¶ 11. After deducting Administrative Costs,[1] Attorneys'

---

[1] Capitalized terms are defined in section III of the Settlement Agreement, which is attached as Exhibit 1 to the Simplicio Declaration.

Fees and Costs, and class representative service awards, the entire amount remaining in the Settlement Fund will be distributed pro rata to those Settlement Class Members who submit a timely claim. *See generally* Ex. 1, § 6. A robust notice plan has been developed in conjunction with the Settlement Administrator, Kroll LLC, an experienced provider of class action settlement services. Simplicio Decl. ¶ 32. No amount of the Settlement Fund will revert to ECSI; in the event that any funds remain, a secondary distribution to class members will be made, and if needed, will be distributed to a *cy pres* recipient. Ex. 1, § 5.5.

## IV.    ARGUMENT

Plaintiffs and ECSI reached the Settlement Agreement after a year of intense negotiations and with the assistance of a neutral mediator. The Settlement Agreement provides robust relief for student loan borrowers, creates comprehensive and carefully tailored notice and claims-processing programs, and balances the value of Plaintiffs' and the Settlement Class's claims against the risk of further litigation. It is fair, reasonable, and appropriate. Moreover, conditional certification of the Settlement Class is appropriate here because the proposed Settlement Class meets all the applicable Rule 23 certification requirements.

### A.    The settlement is fair, reasonable, and appropriate.

Rule 23 contemplates a sequential process for courts evaluating class action settlements. First, a court must determine whether a class should be certified for settlement purposes. *See, e.g., Sullivan v. D.B. Inv., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). Second, a court must consider whether to approve the settlement preliminarily and order notice be provided to the class. *See, e.g.*, *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.* ("*In re General Motors*"), 55 F.3d 768, 787 (3d Cir. 1995). Third, after the class has been notified and has had the opportunity to consider the settlement, the Court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." *Id.*; Fed. R. Civ. P. 23(e). District courts have broad discretion in determining whether to

approve a proposed class action settlement. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

A court's review of preliminary approval is less stringent than during final approval. "At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered, and the court is required to determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *See Torres v. BrandSafway Indus. LLC*, No. 2:21-CV-01771-CCW, 2023 WL 346667, at *2 (W.D. Pa. Jan. 20, 2023) (internal quotation marks omitted). At this stage, "an initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors*, 55 F.3d at 785-86. As set forth herein, the Settlement Agreement not only satisfies the first three criteria identified by the Third Circuit in *In re General Motors* (the last – objections – will only become known at final approval), but contains other hallmarks of fairness.

### 1.    Arms'-Length Negotiations Between Experienced and Informed Counsel Warrants a Presumption of Fairness.

*First*, the Settlement Agreement is the result of spirited, informed, arm's length negotiations. *Cf. In re Gen. Motors*, 55 F.3d at 785-86. Whether a settlement arises from arm's length negotiations is a key factor in assessing the agreement for purpose of granting preliminary approval. *See Walker v. Highmark BCBSD Health Options, Inc.*, No. 2:20-CV-01975-CCW, 2022 WL 17592067, at *3 (W.D. Pa. Dec. 13, 2022) (noting that a presumption of fairness exists where parties negotiate at arm's length, and the assistance of a neutral mediator "virtually assured" that negotiations occurred at arm's length without collusion) (internal quotation marks omitted); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting the fact

that the negotiations included "two full days of mediation"); *see also Newberg on Class Actions* § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

In this litigation, Plaintiffs and ECSI engaged in strongly contested, arm's length negotiations that spanned nearly a full year. Both sides fought hard for what they believed was a fair resolution, exchanged data, and briefed thorough mediation statements. Moreover, the settlement was reached with the assistance of Judge Stengel, a neutral mediator. Although the parties did not reach an agreement until after the mediation, the mediation was integral to the parties' eventually agreeing to the terms in the Settlement Agreement. Simplicio Decl. ¶ 10. These extensive negotiations fully support a finding that the proposed settlement is fair.

*Second*, while discovery exchanged was informal, proposed Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims. *Id.* ¶ 8. This case settled early in the litigation process before formal discovery took place, but as part of the extensive negotiation process, ECSI produced documents showing, *inter alia*, the size of the Settlement Class, the identity of Settlement Class members, and the amount of potential damages involved. *Id.* ¶ 6. Class Counsel has litigated and settled numerous other cases against debt collectors for violations of 1692f(1) Statutes, and is knowledgeable about the legal theories, risks, and discovery required. *Id.* ¶¶ 25-27. *See also* App'x A (chart summarizing other processing fee settlements).

The "sufficient discovery" factor in *In re Gen. Motors* does not require formal discovery; rather, it focuses on whether proposed class counsel had enough information to allow for negotiation of a fair settlement. "What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re Nat'l Football League Players Concussion Inj. Litig.* ("*In re NFL*"), 821 F.3d 410, 439 (3d Cir. 2016), *as amended* (May 2, 2016). Indeed, as the Third Circuit explained, "requiring parties to

conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip—the costs of formal discovery itself—off the table during negotiations. This could deter the early settlement of disputes." *Id.* Here, Class Counsel's experience in successfully litigating and settling similar claims, as well as the records shared in the negotiation process allowed Class Counsel to fully assess the value of the Settlement Class's claims and to negotiate notice and claims-administration programs tailored to maximize relief to Settlement Class members. Simplicio Decl. ¶¶ 7-8. This factor therefore further supports preliminarily approving the Settlement Agreement.

Importantly, Plaintiffs believe that this is not a fact-intensive case that depended on extensive discovery to assess ECSI's potential liability. It is undisputed that ECSI assessed the alleged fees, and Plaintiffs firmly believe that the MPN's governing Plaintiffs' and Settlement Class members' student loans are form contracts the content of which is a matter of public record. Thus, Class Counsel "were aware of the strengths and weaknesses of their case" before engaging in settlement negotiations with ECSI and without the need for formal discovery. *In re NFL*, 821 F.3d at 436 (internal quotation marks omitted).

Thus, the relevant facts were already known; formal discovery primarily would have shed light on the scope of potential damages, which the parties' informal discovery allowed Proposed Class Counsel to assess. Thus, formal discovery would not have given Plaintiffs or their counsel significantly more information on which to act than what they obtained in the negotiation process. Plaintiffs and their counsel were more than sufficiently informed to appreciate the value of their claims based on the information shared in the negotiation process. *See Douglass v. Optavia LLC*, No. 2:22-CV-00594-CCW, 2022 WL 4281546, at *3 (W.D. Pa. Sept. 14, 2022) ("[A]lthough discovery has not occurred in this case, that fact is insignificant here, where the facts are largely undisputed, and Mr. Douglass's counsel engaged in a substantial investigation into Optavia's digital platforms and their accessibility.").

*Third*, Class Counsel and Defendant's counsel are experienced in class action litigation, and Class Counsel have litigated and settled numerous pay-to-pay cases arising from the assessment of Processing Fees. Simplicio Decl. ¶¶ 25-29. This, too, supports finding that the Settlement Agreement is fair and reasonable. *See, e.g.*, *In re Gen. Motors*, 55 F.3d at 785-86; *Douglass*, No. 2:22-CV-00594-CCW, 2022 WL 4281546, at *3 (presumption of fairness established in support of preliminary approval in part because "the parties [we]re represented by competent counsel experienced in complex, comparable litigation"); *Klingensmith v. BP Prod. N. Am., Inc.*, No. CIV.A. 07-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (the fact that the settlement "was reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator" supported preliminary approval).

### 2.    The Settlement Agreement Contains Other Hallmarks of Fairness.

Other factors warrant preliminary approval of the Settlement Agreement.

*First,* the proposed allocation plan treats class members fairly. The Settlement defines a clearly identifiable Settlement Class—one ascertainable by a methodological review of ECSI's business records. The Class definition complies with the requirements of the Third Circuit's decision in *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013), and *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012). Simply put, this is not a case where "class members are impossible to identify without extensive and individualized factfinding or 'mini-trials.'" *Marcus*, 687 F.2d at 593.

*Second*, the proposed Settlement treats all Settlement Class equally and does not provide undue preferential treatment to any individual Settlement Class member. Specifically, the plan of allocation in the Settlement—which is discussed in more detail in the Settlement Agreement—divides the Net Settlement Fund (that is, the Settlement amount minus any deductions for notice and administration costs, class representative service award, and attorneys' fees and costs) on a *pro rata* basis based on the number of relevant fees assessed against an account during the Class Period. In short, the higher

number of relevant fees a Settlement Class member incurred, the higher his or her distribution will be.

While members of the Settlement Class must make a claim to receive a distribution, all will receive notice and the opportunity to make a claim pursuant to the robust plan devised. While direct distribution of cash awards would have provided every Class Member with a payment, it would have substantially increased costs, and thus, the claims process was chosen for the excellent value it will provide to Settlement Class Members. A claims process allows for the election of electronic payment options, and thus, avoids the need to mail 552,000 people paper checks – an enormous expensive relative to the small amounts of the fees. Indeed, where settlements provide for claims processes, e-payment election rates are often very high, particularly among younger people, who are believed to make up the substantial majority of this class made up of student loan borrowers. Simplicio Decl. ¶ 33. Because no money will revert to ECSI, but rather, the entire Net Settlement Fund will be distributed to those who make claims, the Settlement Class gets the entire benefit of the cost-savings from this distribution method.

Settlement class members are further treated fairly in the distribution because the plan of allocation rests, entirely, upon accurate, extensive fee data maintained in ECSI's records, which ECSI provided to allow for the administration of this Settlement. *Id.* ¶ 6. Plaintiffs and Class Counsel believe that this plan of allocation is fair and reasonable, and merits preliminary approval. *Id.* ¶ 31. Thus, this factor further supports preliminary approval.

*Third*, the proposed settlement amount is well within the permissible range in this Circuit and is consistent with settlements in prior similar cases. *See* App'x A. The relief the Settlement Agreement provides for Class Members is outstanding. ECSI has agreed to create a Settlement Fund of $3.65 million to reimburse Settlement Class members for relevant fees incurred during the Class Period.

Plaintiff estimates this amount represents approximately 25% of the maximum amount damages they may have been able to secure at trial.

That maximum damages amount represents, essentially, all Processing Fees charged on phone or online loan payment transactions. In addition to the risks of litigating the merits, discussed below, there are risks that damages would be significantly reduced even if Plaintiffs prevailed. For example, ECSI would have likely argued that a proper damages valuation should not be all amounts paid, but rather, that its out-of-pocket costs associated with the Processing Fees needed to be deducted from any amounts paid, or that equitable considerations should be given to the fact that the borrowers may have avoided steeper late fees. Given this uncertainty in total damages, this recovery of 25% of best-case scenario damages is appropriate. Indeed, it is well within the range of recovery routinely approved by courts in this Circuit. *See, e.g., Teh Shou Kao v. CardConnect Corp.*, No. 16-CV-5707, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2021) (approving settlement representing approximately 29 percent of the damages the class could have recovered at trial, as calculated by the plaintiff); *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 2:18-CV-1370, 2020 WL 3481458, at *17 (W.D. Pa. June 26, 2020) (settlement fund representing approximately 10-20 percent of the total amount plaintiffs could recover at trial to be reasonable in light of the risk of continued litigation); *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018) (finding settlement representing 25 percent of the maximum amount recoverable at trial to fall "well within the range of reasonableness when considering the risks of continued litigation"); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015) (finding settlement representing approximately 24 percent of estimated actual damages reasonable and noting that the court has "upheld far smaller settlements"); *Nichols v. SmithKline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616 at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement fund representing between 9.3% and 13.9% of damages estimates as "consistent with those approved in other complex class action cases"); *In re Ravisent Techs., Inc. Secs. Litig.*, No. Civ. A. 00-CV-1014, 2005 WL 906361 at *

9 (E.D. Pa. Apr. 18, 2005) (finding settlement of 12.2% to be "within the range of reasonable recovery for a securities class action"); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement that "represents only about 5.35% of the estimated damages for the entire class period"). Moreover, 25% of damages is well within the range of the percentage of damages achieved in settlements of other similar cases arising from the assessment of Processing Fees. *See* App'x A.

*Fourth*, the Settlement Agreement reflects the risks Plaintiffs and the Settlement Class would face in litigation. District courts evaluating a proposed class settlement "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Murphy v. Le Sportsac, Inc.*, No. 1:22-CV-00058-RAL, 2023 WL 375903, at *10 (W.D. Pa. Jan. 24, 2023) (internal quotation marks omitted). However, "a court should not conduct a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *Id.* (internal quotation marks omitted). Thus, "the Court need not delve into the intricacies of the merits of each side's arguments, but rather may give credence to the estimation of the probability of success proffered by Class Counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Id.* (quoting *Glaberson v. Comcast Corp.*, No. CV 03-6604, 2015 WL 5582251, at *6 (E.D. Pa. Sept. 22, 2015)).

This case is settling in its early stages; if the Settlement Agreement is not approved, the parties will likely need to litigate multiple dispositive motions and a motion for class certification. The litigation would likely take years to resolve and involve expensive expert discovery. The Parties would need to resolve discovery disputes and incur the expense and burden of preparing for trial. Even if Plaintiffs succeed at class certification and the merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Settlement Class members. Instead, there would be multiple points at which the Settlement Class's claims could be narrowed or dismissed, including trial. *See Weiss v. Mercedes Benz of N. Am.*, 899

F. Supp. 1297, 1301 (D.N.J. 1995) (warning that in complex cases, "[t]he risks surrounding a trial on the merits are always considerable").

As far as Plaintiffs can ascertain, this is the first case against a student loan servicer asserting the legal theory that Processing Fees are unlawful under state "1682f" statutes and/or student borrower bill-of-rights statutes. There is scant case law interpreting student borrower bill-of-rights statutes, and none that Plaintiffs have found construing those statutes in a similar factual context. While the case law on state debt-collection statutes is a bit more robust, almost all the factually analogous cases were decided in cases against mortgage servicers whose contracts with consumers were much different than the federal student loan agreements at issue here. And in that regard, Plaintiffs are aware of no court deciding or even hinting at whether the federal MPN governing Perkins loans authorized ECSI to charge Processing Fees. For its part, ECSI believes it has a number of robust defenses to Plaintiffs' various claims and would vigorously defend this matter if it were to proceed with litigation. Balanced with the costs of extensive litigation, the novelty of the claims presented here, and the uncertainty and litigation risk created by such novelty, the recovery provided for in the Settlement Agreement is more than reasonable. And the fact that relief will be provided without further delay is an important factor.

Moreover, Plaintiffs believe that ECSI would have raised defenses to class certification that would have presented additional risks to class certification or recovery for members of the Settlement Class. For example, ECSI may have argued that some Settlement Class members' loans were paid by their parents, and thus that such individuals suffered no damages, and a large number of individual inquiries would be necessary to resolve these questions. To be clear, Plaintiffs believe that they would successfully defeat these arguments and would ultimately prevail on the merits, but Class Counsel well know the uncertainty associated with protracted litigation, and they believe that the relief provided for

in the Settlement Agreement reasonably balances the potential recovery at trial with the potential obstacles and pitfalls that could be experienced along the way.

In light of the novel issues present in this case, as well as the legal complexity entailed in the prosecution and defense of this case and the unpredictability associated with class certification proceedings, a lengthy trial and any appellate proceedings (both under Rule 23(f) and on the merits), Plaintiff submits that the result achieved is excellent under all the circumstances. As the Proposed Settlement is within the range of possible approval, the Class should be notified and given the opportunity to evaluate the terms of the Settlement.

*Finally,* the Settlement Agreement's provision for attorneys' fees and service awards is also reasonable. The Settlement Agreement provides that the total amount requested in attorneys' fees and expenses will be no more than 33.33% of the aggregate amount of the Common Fund. Ex. 1, § 6.4. The Settlement Agreement further provides that Plaintiffs will request service awards of no more than $10,000 per class representative. *Id.,* § 6.5 The Court will have the opportunity to assess the reasonableness of any requested award once it is made. For now, it is enough to note that these provisions ensure that class counsel will request an amount in fees that is reasonable relative to the relief they obtained for the Class.

**V.    The proposed form and method of class notice satisfy due process.**

The Settlement Agreement's notice program is robust and easily satisfies due process. Rule 23(e)(1) ensures that absent class members' due process rights are enforced by entitling class members to reasonable notice of a proposed settlement. *See Manual For Complex Litig.* §§ 21.312, 21.631 (4th ed. 2011). "[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 174 (E.D. Pa. 2000) (internal quotation marks and citation omitted).

14

In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Specifically, Rule 23(c)(2)(B) requires that the "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the form and content of the proposed Notices satisfy and exceed all these requirements. *See* Ex. 1, Sub-Exs. A1-A3. The Notices inform absent class members of the pendency of the litigation, the Court's preliminary certification of the Settlement Class, the terms of the Settlement Agreement, detailed instructions on how to make a claim, Settlement Class Members' right to opt out or object and the time for doing so, the time and location of the Final Approval Hearing, Class Counsel's expected fee application, the expected request for service awards for the named Plaintiffs, links to the Settlement Website, the toll-free number to call for questions, and other information related to the Settlement Agreement. This content is more than sufficient because it "fairly apprise[s] the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotations omitted). And under the Settlement Agreement and the Notice Program, Settlement Class members will have days to make a claim, opt out, or object.

Further, the Notice Program is designed to be the best notice practicable, and it is tailored to take advantage of the information ECSI has available about members of the Settlement Class. The

Notice Program consists of two stages, Initial Notice and Supplemental Notice. *See generally* Ex. 1, §
10. The Initial Notice stage is simply a typical notice process; it is intended to provide Settlement Class
Members all the information they need to make a decision about whether to remain in the class, make
a claim, file an objection or exercise opt-out rights. During this stage, the Settlement Administrator
will provide direct e-mail notice substantially in the form of Exhibit 1-A1 to all known Settlement
Class members at all known email addresses as indicated in ECSI's business records. For the minority
of Settlement Class members for whom ECSI does not have a valid email address, a postcard notice
substantially in the form of Exhibit 1-A2 will be sent to their last known mailing address. These
Notices will apprise Class Members of the deadline to make a claim, file an objection, or exclude
themselves, as well as refer Class Members to the Settlement Website. There, the Settlement
Administrator will publish deadlines, a full copy of the Settlement Agreement and other pertinent
documents, and provide the long-form notice, which contains frequently asked questions, substantially
in the form of Exhibit A3. The Settlement Website will also contain a place where Settlement Class
Members can submit claims. Class members will also be provided with a toll-free telephone line for
Settlement Class members to call with settlement and claims-related inquiries.

The Supplemental Notice stage is designed to ensure Settlement Class Members do not miss
the opportunity to file a claim. The Settlement Administrator will provide additional email reminders
during the notice period, encouraging those Settlement Class Members that have not yet made a claim
to the Settlement Website to do so. This multi-pronged notice strategy will ensure that virtually all
Settlement Class members receive Initial Notice, and most will receive additional reminders.
Moreover, it is eminently practicable, as it avoids the high administration costs of mailed notices to all
Settlement Class members without sacrificing the reach and effectiveness of the Notice Program.
Indeed, based on their significant experience, Class Counsel and the proposed Claims Administrator
believe that the supplemental targeted social media advertising provided for in the Notice Program

will increase the effectiveness of the claims process by providing additional reminders to Class Members beyond the initial notice. Simplicio Decl. ¶ 33.

In sum, the Notice Program exceeds the requirements of Rule 23 and due process, and Plaintiffs are confident it is the best notice practicable.

### A.     The Settlement Class meets all of Rule 23's requirements for conditional certification.

In addition, the Settlement Class satisfies Rule 23(a)'s requirements.

#### 1.     Numerosity

Rule 23(a)(1) provides for class certification where, as here, the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). "While there is no talismanic number required to satisfy numerosity, courts typically have held that classes of around 40 or more members are sufficient." *Cottillion v. United Ref. Co.*, No. CIV.A. 09-140E, 2013 WL 5936368, at *2 (W.D. Pa. Nov. 5, 2013), *aff'd*, 781 F.3d 47 (3d Cir. 2015); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("Generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceed 40, the first prong of Rule 23(a) has been met."). Here, the Settlement Class consists of more than 552,000 people. The numerosity requirement is plainly met.

#### 2.     Commonality

This case also satisfies Rule 23(a)(2)'s commonality requirement. "Rule 23(a)(2)'s commonality element requires [merely] that the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin*, 391 F.3d at 527-28 (affirming certification of settlement class). "A finding of commonality does not require that all class members share identical claims." *Id.* at 530 (citation and internal quotation marks omitted). Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met here.

There are multiple common issues in this litigation, beginning with the principal question that Plaintiffs contend will drive resolution of case. That question is whether the Perkins loan MPN

common to all Settlement Class members authorized ECSI's practice of assessing Processing Fees. Answering this common question would drive resolution of this litigation in a single stroke.

Additional common questions in this litigation include:

- Whether Class members' loan agreements authorized the fees assessed by ECSI;

- whether ECSI was in near or functional privity or privity of contract with Settlement Class members;

- whether ECSI was operating as an agent for the educational institutions who provided Perkins loans to borrowers;

- whether ECSI charged Settlement Class members the at-issue fees;

- whether the fees assessed by ECSI were in excess of the actual cost of the fees, i.e., the costs and charges incurred by ECSI to accept student loan payments by ACH, debit card, or credit card;

- whether ECSI breached Settlement Class members' loan agreements and violated state and federal laws;

- whether Plaintiffs and Settlement Class members suffered damages as a result of ECSI's conduct;

- whether Plaintiffs and Settlement Class members are entitled to restitution;

- whether Plaintiffs and Settlement Class members are entitled to attorneys' fees and costs; and

- the appropriate remedies due by ECSI to Settlement Class members.

Accordingly, the commonality requirement is easily satisfied here.

### 3.    Typicality

"If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

Here, all claims arise from the same challenged conduct—ECSI's assessment of Processing Fees for student loan payments, and the principal question is whether those assessments were authorized by the standardized MPN contracts held by all Settlement Class members. Thus, to prove their claims, "the named Plaintiffs must establish the same elements as class members." *Reinig v. RBS Citizens, N.A.*, No. 2:15-CV-01042-AJS, 2017 WL 8941219, at *20 (W.D. Pa. Aug. 2, 2017). The purpose of the typicality inquiry is to assess whether the incentives of the named plaintiffs align with those of absent class members so that the action can be tried efficiently and the named plaintiffs will represent the interests of absent class members adequately. *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). Both of those conditions are present here: the named Plaintiffs were subject to the same conduct (ECSI's imposition of Processing Fees) as all members of the Settlement Class, and their legal theories and factual predicates are identical to those of absent class members. They therefore satisfy the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "seeks to uncover conflicts of interest between the named parties and the class they seek to represent." *In re Warfarin*, 391 F.3d at 532. The adequacy requirement has two prongs: (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the entire class." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996).

Here, the named Plaintiffs will adequately represent all members of the Settlement Class. Plaintiffs have vigorously pursued the claims of the Settlement Class, and there is no intra-class conflict. And as described above, the named Plaintiffs' interests are aligned with those of the

Settlement Class because they all have the same legal theories, factual allegations, and damages (the amount of the fees alleged to be unlawful).

Further, if conditionally certified, the Settlement Class will be represented by lawyers who have extensive complex class action experience. Class Counsel have an extensive background in litigating complex litigation and consumer class actions, have been appointed class counsel in prior cases, have significant experience pursuing cases arising from the assessment of servicing and processing fees like those involved here, and have the resources necessary to prosecute this action to its conclusion. Simplicio Decl. ¶¶ 25-29.

     **5.**       **Rule 23(b) Factors**

This action also satisfies Rule 23(b)'s predominance and superiority requirements.

First, to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Newberg on Class Actions* § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by the representative plaintiff. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2008) (citing *Amchem*, 521 U.S. at 623). "Predominance of common questions does not require unanimity of common questions, but rather that common questions outweigh individual questions." *Cole's Wexford Hotel, Inc. v. UPMC*, No. 2:10-CV-01609-JFC, 2016 WL 6919776, at *1 (W.D. Pa. July 29, 2016).

Here, shared issues surrounding the legality and impact of ECSI's practice of assessing Processing Fees predominate over any individual issues. For example, under the "1692f" statutes underlying one of Plaintiffs' primary causes of action, Plaintiffs contend that "the only inquiry" for

purposes of establishing ECSI's liability "is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law." *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-CV-990-LJO-BAM, 2016 WL 2841495, at \*6 (E.D. Cal. May 9, 2016) (emphasis added) (quoting *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011)). This same question— whether the federal Perkins loan MPN contract authorizes ECSI's assessment of Processing Fees— also underpins Plaintiffs' other theories of liability, making this common question determinative across causes of action and across the Settlement Class. And again, Plaintiffs believe that agreement here is a standardized federal form contract common to all Perkins loan borrowers.

In light of the aggregate nature of the issues in cases like this, several courts have granted class certification in mortgage cases involving the same types of fees over the loan servicers' opposition. *See Williams v. Lakeview Loan Servicing LLC*, No. 4:20-CV-01900, 2022 WL 950875, at \*6 (S.D. Tex. Mar. 30, 2022); *Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-CV-04303-WHO, 2021 WL 5230755, at \*14 (N.D. Cal. Nov. 8, 2021); *Sanders v. LoanCare, LLC*, No. 2:18-CV-09376, 2019 WL 12340195, at \*7 (C.D. Cal. Sept. 16, 2019); *Montesi v. Seterus, Inc.*, No. 2015 CA010910 (Apr. 27, 2019, Palm Beach County, FL). The same factors warranting class certification in those mortgage cases are present here.

Further, the focus in this litigation is on ECSI's class-wide conduct of assessing Processing Fees, not on matters pertaining to individual members of the Settlement Class. This case is thus a paradigmatic case in which common issues predominate. *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666 at \*12 (M.D. Pa. Nov. 19, 2007) (stating that "'[c]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members'") (citation omitted). Still further, "[c]ommon issues may predominate when liability can be determined on a classwide basis, even when there are some individual damage issues." *In re Cmty. Bank of No. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 306 (3d Cir. 2005) (internal quotation marks and citation omitted). Here, because ECSI's liability

can be determined in a single stroke by examination of its conduct under the governing laws, predominance is satisfied even if some issues concerning individual damages were to arise.

As to Rule 23(b)(3)'s superiority requirement, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 533-34 (citation and quotation marks omitted). Rule 23(b)(3) identifies various factors as pertinent to a superiority finding, including class members' interests in pursuing separate actions, the extent of any independent litigation already begun by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A-D). *See also Amchem*, 521 U.S. at 615 (noting that the superiority requirement ensures that resolution by a class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'" (citation omitted)).

Here, a class action is superior to individual litigation because the costs of litigation pale in comparison to the damages suffered by individual members of the Settlement Class. Even if a class member has paid multiple Processing Fees, their total damages would amount to less than the fee to *file* a lawsuit in federal court, much less pursue the litigation to its completion. Moreover, without certification, ECSI and the courts could face scores of cases challenging the same conduct, potentially resulting in conflicting rulings. A class action settlement will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated." *Amchem*, 521 U.S. at 615.

For both these reasons, a class action is superior to other available methods for fairly and efficiently adjudicating this case.

## VI.    CONCLUSION

For all these reasons, the Court should enter the Proposed Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) provisionally certifying the Settlement Class; (3) appointing Class Counsel; (4) appointing Plaintiffs as Class representatives; and (5) setting the Parties' proposed schedule for notice, claims, final approval, and other matters.

Dated: January 5, 2024

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Patricia M. Kipnis*
Patricia M. Kipnis (PA 91470)
**BAILEY & GLASSER LLP**
925 Haddonfield Rd, Suite 300
Cherry Hill, NJ 08002
Telephone: (304) 345-6555
Email: pkipnis@baileyglasser.com

James L. Kauffman (DC 1020720) (PHV)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: jkauffman@baileyglasser.com

Kristen G. Simplicio (DC 977556) (PHV)
Hassan A. Zavareei (DC 456161) (PHV)
Glenn E. Chappell (DC 1708506) (PHV)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: ksimplicio@tzlegal.com
        hzavareei@tzlegal.com
        gchappell@tzlegal.com

*Counsel for Plaintiffs and the proposed Settlement Class*

</div>