## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REBECCA NGUYEN**, **TAMICA BREWSTER**, **KYLE STRICKENBERGER**, and **MICHELLE CAYNOR** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**EDUCATIONAL COMPUTER SYSTEMS, INC., d/b/a HEARTLAND ECSI**,<br><br>Defendant. | Case No. 2:22-cv-01743-PLD<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Patricia L. Dodge |

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ..................................................................................................1

II.     CASE BACKGROUND .........................................................................................2

III.    SUMMARY OF SETTLEMENT TERMS ...........................................................2

IV.     NOTICE IS COMPLETE .....................................................................................3

V.      ARGUMENT ........................................................................................................6

        A. The Settlement Satisfies the *Girsh* Factors ...............................................8

        B. The Proposed Form and Method of Class Notice Satisfy Due Process..............................16

VI.     CONCLUSION ...................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)......................................................................................................17

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) ........................................................................................14

*Carter v. Vivendi Ticketing US LLC,*
  No. 22-01981, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)..........................................9

*Comcast Corp. Set-Top Cable Tele. Box Anti. Litig.,*
  333 F.R.D. 364 (E.D. Pa. Sept. 24, 2019) ....................................................................10

*Douglass v. Optavia LLC,*
  No. 2:22-CV-00594-CCW, 2022 WL 4281546 (W.D. Pa. Sept. 14, 2022) ..............12, 13

*Dover v. British Airways, PLC,*
  No. 12-cv-5567, 2018 WL 11412431 (E.D.N.Y. Oct. 9, 2018).....................................10

*Eisen v. Carlisle & Jacqueline,*
  417 U.S. 156 (1974) .....................................................................................................17

*Elec. Carbon Prods. Antitrust Litig.,*
  447 F. Supp 2d 389 (D.N.J. 2006) .................................................................................9

*Fulton-Green v. Accolade, Inc.,*
  2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...............................................................10

*Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig* 55 F.3d 768, 787 (3d Cir.
  1995)................................................................................................................7, 11, 13

*Ikon Office Solutions, Inc., Sec. Litig.,*
  194 F.R.D. 166 (E.D. Pa. 2000).....................................................................................17

*Jackson v. Wells Fargo Bank, N.A.,*
  136 F.Supp. 3d 687 (W.D. Pa. 2015)..............................................................................10

*Klingensmith v. BP Prod. N. Am., Inc.,*
  No. CIV.A. 07-1065, 2008 WL 4360965 (W.D. Pa. Sept. 24, 2008) ................................13

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.,*
  C.A. No. 08-CV-3610 (CLW), 2015 WL 2383358 (D.N.J. May 18, 2015), aff'd,
  639 F. App.'x 880 (3d Cir. 2016)....................................................................................9

*Lazy Oil Co. v. Wotco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997)..................................................................16

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012)............................................................................14

*Maywalt v. Parker and Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995)............................................................................18

*McDonough v. Toys R Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015).................................................................16

*Murphy v. Le Sportsac, Inc.*,
    No. 1:22-CV-00058-RAL, 2023 WL 375903 (W.D. Pa. Jan. 24, 2023)..................12

*Nat'l Football League Players Concussion Inj. Litig*
    821 F.3d 410, 439 (3d Cir. 2016) ..................................................................7, 11

*Nichols v. SmithKline Beecham Corp.*,
    No. Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005).......................16

*Pfeifer v. Wawa, Inc.*,
    No. CV 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018)............................16

*Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 282 (3d Cir. 1998).........................................................................9, 10

*Ravisent Techs., Inc. Secs. Litig.*,
    No. Civ. A. 00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) .................16

*Rescigno v. Statoil USA Onshore Prop. Inc.*,
    No. 3:16-85, 2023 WL 145008 (M.D. Pa. Jan. 10, 2023)..................................13

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
    No. 2:18-CV-1370, 2020 WL 3481458 (W.D. Pa. June 26, 2020) ................. 10, 15

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F.Supp. 2d 402 (E.D. Pa. 2010)................................................................13

*Sullivan v. D.B. Inv., Inc.*,
    667 F.3d 273 (3d Cir. 2011) (en banc) ...........................................................7, 10

*Teh Shou Kao v. CardConnect Corp.*,
    No. 16-CV-5707, 2021 WL 698173 (E.D. Pa. Feb. 23, 2021)............................15

*Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................7

*Weiss v. Mercedes Benz of N. Am.*,
 899 F. Supp. 1297 (D.N.J. 1995)....................................................................................13

**Rules and Statutes**

Federal Rule of Civil Procedure 23 ..............................................................................7, 19

Federal Rule of Civil Procedure 23(b)(3) ...........................................................................17

Federal Rule of Civil Procedure 23(c)(2)(B) .....................................................................17

Federal Rule of Civil Procedure 23(c)(3) ...........................................................................17

Federal Rule of Civil Procedure 23(e)............................................................................ 1, 2, 7

Federal Rule of Civil Procedure 23(e)(1) ...........................................................................16

Federal Rule of Civil Procedure 23(f) ................................................................................16

**Other Authorities**

Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class
 Action Litigation:  A Pocket Guide for Judges, at 27 (3d Ed. 2010)............................5, 19

FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language*
 *Guide* (2010)....................................................................................................................5, 19

Manual For Complex Litig. §§ 21.312, 21.631 (4th ed. 2011) ....................................16

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Rebecca Nguyen, Tamica Brewster, Kyle Strickenberger, and Michelle Caynor, by counsel and on behalf of the conditionally certified class, hereby move for final approval of the Settlement Agreement they and Defendant Educational Computer Systems, Inc. ("ECSI") reached to resolve this case on a class wide basis. This class action lawsuit arises from ECSI's assessment of certain fees to process student borrowers' Perkins loan payments. Plaintiffs and ECSI have agreed on a settlement that provides for a $3.65 million common fund ("Settlement Fund") that will be distributed on a *pro rata* basis to Perkins borrowers who have submitted a claim. There is no reversion; the full net amount of the fund after expenses and attorneys' fees will be distributed to members of the proposed settlement class. The settlement also provides for services awards for the named Plaintiffs and an award of attorneys' fees not to exceed one third of the Settlement Fund.

The proposed settlement is fair, reasonable, and appropriate, and it provides robust relief for the affected student borrowers. It was negotiated at arm's length over the course of a year with the assistance of a retired federal judge serving as a neutral mediator, it is the product of an extensive investigation of the relative strengths and weaknesses by counsel experienced in both consumer class actions and cases involving servicing and/or processing fees like those at issue here, and it is well within the range of reasonableness. Moreover, the Court-approved notice program was designed to reach every class members by employing email and traditional mail notice and indeed reached approximately 99.99% of the Settlement Class. And it provides for claim payments using modern payment methods popularly used by members of the class's age group, rather than expensive and unlikely to be cashed paper checks. Put simply, the agreement is carefully tailored to maximize relief to class members while controlling for the risks of litigation and the expense of notice and claims administration.

Because the agreement meets all the requirements for final approval, Plaintiffs request that the Court enter the Proposed Final Approval Order attached to this motion, which will: (1) Pursuant to Fed. R. Civ. P. 23(e), determine that the Settlement is fair, adequate, and reasonable and grant final approval in all respects of the terms and provisions of the Class Settlement Agreement (D.E. 60-1), which the Court preliminarily approved by Order entered on March 6, 2024 (D.E. 66); (2) finally certify the Settlement Class for settlement purposes only; (3) determine that the Notice provided to the Settlement Class satisfied Due Process requirements; (4) dismiss on the merits and with prejudice the class and individual claims in this action without costs to Defendant; and (5) retain jurisdiction over this action for the purpose of interpretation and enforcement of the Settlement Agreement, including oversight of settlement administration and distribution of Settlement Funds.

For the reasons set forth more particularly below, Plaintiffs respectfully request that the Court grant this Motion, which Defendant does not oppose.

## II.    CASE BACKGROUND

The history of the case is set forth at section II in Plaintiffs' Motion for Preliminary Approval, and in more detail in Class Counsel's accompanying declaration to that Motion. *See* D.E. 60; *see also* D.E. 60-1 Decl. of Kristen Simplicio in Supp. of Pls.' Mot. for Preliminary Approval ("Simplicio Decl.") at ¶¶ 4-13.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on January 5, 2024. D.E. 60. The Court granted the Motion on March 6, 2024. D.E. 66. The Court has scheduled a Final Approval Hearing before Magistrate Judge Dodge for June 24, 2024. D.E. 67. Plaintiffs have separately moved for attorney's fees, costs, and service awards. D.E. 69.

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement Fund of $3.65 million dollars represents 25% of the amount collected in Processing Fees from approximately 552,293 Perkins loans borrowers by ECSI between December 6,

2018 and October 31, 2023. Simplicio Decl. Submitted in Support of Preliminary Approval, D.E. 60-1, ¶ 11. After deducting Administrative Costs,[1] Attorneys' Fees and Costs, and class representative service awards, the entire amount remaining in the Settlement Fund will be distributed pro rata to those Settlement Class Members who submit a timely claim. *See generally* Ex. 1, § 6. The Court has preliminarily approved a robust notice plan which has been developed in conjunction with the Settlement Administrator, Kroll LLC, an experienced provider of class action settlement services. Simplicio Decl. ¶ 32. No amount of the Settlement Fund will revert to ECSI; in the event that any funds remain, a secondary distribution to class members will be made, and if needed, will be distributed to a *cy pres* recipient. D.E. Ex. 1, § 5.5.

## IV.    NOTICE IS COMPLETE

The Settlement Administrator has provided a Declaration attesting to the Notice process, which is now complete. *See* Exhibit A, Fenwick Decl.. Kroll was appointed as the Settlement Administrator to provide notification and claims administration services in connection with the Settlement Agreement. Kroll Decl. at ¶ 1. Kroll received the data file from Defendant on March 11, 2024 and undertook several steps to reconcile the nearly two million records and compile the eventual Class List for the emailing and mailing of the Initial Notice. This included standardizing address information, de-duping and performing a roll up of records with multiple names, mailing addresses, dates of birth, and the last four digits of Social Security Numbers. As a result of this data cleaning process, Kroll identified 537,769 unique records. *Id.* at ¶ 4. Of these, Kroll identified 531,551 unique records with a provided email address, and 6,218 unique records with a provided physical mailing address but no email address. Additionally, in an effort to ensure that the Postcard Notice would be deliverable to Settlement Class Members, Kroll ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.* at ¶ 4.

---

[1] Capitalized terms are defined in section III of the Settlement Agreement, which is attached as Exhibit 1 to the Simplicio Declaration.

The Settlement Website, www.PerkinsLoanFeeSettlement.com, "went live" on March 26, 2024, and contains information about the Settlement, copies of the Claim Form, Settlement Complaint, Settlement Agreement, Long Form Notice, and the Preliminary Approval Order, as well as contact information for the Settlement Administrator, answers to frequently asked questions, important dates, including the exclusion deadline, objection deadline, Claim Filing Deadline, and the Final Approval Hearing date, and provided Settlement Class Members the opportunity to file a Claim Form online. *Id.* at ¶ 5. Kroll also established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system with a voicemail setup that allows callbacks from a live operator.  As of June 4, 2024, the IVR system has received 1,344 calls, and 337 callers have received a returned phone call from a live operator after leaving a voicemail through the IVR system. *Id.* at ¶ 6. Kroll further designated a post office box with the mailing address *Nguyen et al. v. Educational Computer Systems, Inc.*, c/o Kroll Settlement Administration LLC, PO Box 5324, New York, NY 10150-5324, in order to receive opt outs, Claim Forms, objections, and correspondence from Settlement Class Members. *Id.* at ¶ 7.

On March 27, 2024, Kroll caused 6,218 Postcard Notices to be mailed via first-class mail. Kroll Decl. at ¶ 8. On March 27, 2024, Kroll caused the Email Notice to be sent to the 531,551 email addresses on file for Settlement Class Members as noted above. *Id.* at ¶ 9. Of the 531,551 emails attempted for delivery; 104,442 emails were rejected/bounced back as undeliverable. *Id.* On May 7, 2024, Kroll sent Postcard Notices via first class mail to the 104,442 forgoing Settlement Class Members whose Email Notice was rejected/bounced back. *Id.* On May 7, 2024, as required under section 10.4 of the Settlement Agreement, Kroll caused the Supplemental Notice to be sent to Settlement Class Members who had not yet filed a Claim Form nor opted out of the Settlement, as follows: via email to 414,098 Settlement Class Members with a known email address and via mail to 6,349 Settlement Class Members with no known email address. *Id.* at ¶ 10. On May 17, 2024, at the direction of counsel for the Parties, Kroll caused an additional Supplemental Notice to be sent via

email to 334,072 Settlement Class Members who had not yet filed a Claim Form nor opted out of the Settlement. *Id.* at ¶ 11. On May 24, 2024, at the direction of counsel for the Parties, Kroll caused a second Supplemental Notice to be sent via email to 326,129 Settlement Class Members who had not yet filed a Claim Form nor opted out of the Settlement. *Id.* at ¶ 12.

Kroll has reason to believe that Notice likely reached 537,742 of the 537,769 persons to whom Notice was mailed and/or emailed, which equates to a reach rate of the direct notice of approximately 99.99%. *Id.* at ¶ 15. Kroll has stated that this reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3] *Id.*

As to claim activity, the Claim Filing Deadline was May 28, 2024. *Id.* at ¶ 16. As of June 4, 2024, Kroll had received fifty-two (52) Claim Forms through the mail and 40,024 Claim Forms filed electronically through the Settlement Website, for a total of 40,076 Claim Forms received. *Id.* at ¶ 17. Kroll is still in the process of reviewing and validating Claim Forms. Based on the foregoing, Kroll estimates that the claims filing rate is 7.45% of Settlement Class Members who likely received Notice. The exclusion deadline and the objection deadline was June 3, 2024. Kroll has received one (1) timely exclusion request and no objections to the Settlement. *Id.* at ¶ 21.

Although Kroll did not directly receive objections, at the time of this filing there are two objections on the docket. (D.E. 75, 76.) As to the first, the Objector characterizes it as an "objection/response" and acknowledges within the objection is "unique to and applies only to" the particular class member and which complains of debt collection activity unique to that class member,

---

[2] Fᴇᴅ. Jᴜᴅ. Cᴛʀ., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.
[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

seeking to have that activity resolved through this class action settlement. D.E. 75. Plaintiffs note the Objector acknowledges that "counsel for the class plaintiffs have obtained what seems to be a fair resolution for class members in most instances" and is seeking relief from the Court for conduct allegedly directed solely at the objecting/responding class member. The parties agree that the Release does not encompass the activity complained of in the "objection/response" and hope to have this issue resolved in advance of the hearing. If not, the parties will be prepared to further address this issue at the hearing.

The second objection was docketed the day this submission was due and filed with the Court June 7, four days after the June 3, 2024 deadline and is therefore untimely. D.E. 76. The Objector complains that the Settlement and Notice were inadequate. These issues have been considered and addressed by the parties and the Court. The Common Fund established in the Settlement represented 25% of fees paid by Class Members, i.e., 25% of their actual damages, which the Court has found appears to be fair, reasonable and adequate. Moreover, as set forth in Plaintiffs' Motion for Attorneys' Fees, the amount is consistent with common funds awarded in other settlements involving pay-to-pay fees. *See* D.E. 60 at 17 and App'x A. While those settlements were typically automatic distribution settlements, here, to reduce administrative fees, a claims-made process was used, and thus, anyone who made a claim is likely to receive much more than 25% of fees collected. An updated estimate can be provided to the Court in advance of the hearing on final approval. With respect to notice, the Court also found that the proposed form and method of class notice satisfy due process, and indeed through the Settlement Administrator's efforts the various forms of notice achieved a reach rate of 99.99%.

## V.    ARGUMENT

Plaintiffs and ECSI reached the Settlement Agreement after a year of intense negotiations and with the assistance of a neutral mediator. The Settlement Agreement provides robust relief for student loan borrowers, creates comprehensive and carefully tailored notice and claims-processing programs,

and balances the value of Plaintiffs' and the Settlement Class's claims against the risk of further litigation. It is fair, reasonable, and appropriate. Notice is complete, and only one class member has opted out. The claims rate of 7.4% indicates classwide approval of the Settlement. For all these reasons, the Settlement warrants final approval.

Rule 23 contemplates a sequential process for courts evaluating class action settlements. First, a court must determine whether a class should be certified for settlement purposes. *See, e.g., Sullivan v. D.B. Inv., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). Second, a court must consider whether to approve the settlement preliminarily and order notice be provided to the class. *See, e.g., In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.* ("*In re General Motors*"), 55 F.3d 768, 787 (3d Cir. 1995). Third, after the class has been notified and has had the opportunity to consider the settlement, the Court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." *Id.*; Fed. R. Civ. P. 23(e). District courts have broad discretion in determining whether to approve a proposed class action settlement. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

The Court of Appeals for the Third Circuit has indicated that courts should consider the *Girsh* factors in determining whether a proposed class action settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 437 (3d. Cir. 2016, as

amended (3d. Cir. 2016), citing *Girsh v. Jepson,* 521 F.2d 153, 157 (3d. Cir. 1957)). The Settlement meets all of these factors.

### A. The Settlement Satisfies the Girsh Factors

*First*, as far as Plaintiffs can ascertain, this is the first case against a student loan servicer asserting the legal theory that Processing Fees are unlawful under state "1682f" statutes and/or student borrower bill-of-rights statutes. There is scant case law interpreting student borrower bill-of-rights statutes, and none that Plaintiffs have found construing those statutes in a similar factual context. While the case law on state debt-collection statutes is a bit more robust, almost all the factually analogous cases were decided in cases against mortgage servicers whose contracts with consumers were much different than the federal student loan agreements at issue here. And in that regard, Plaintiffs are aware of no court deciding or even hinting at whether the federal MPN governing Perkins loans authorized ECSI to charge Processing Fees. For its part, ECSI believes it has a number of robust defenses to Plaintiffs' various claims and would vigorously defend this matter if it were to proceed with litigation. Balanced with the costs of extensive litigation, the novelty of the claims presented here, and the uncertainty and litigation risk created by such novelty, the recovery provided for in the Settlement Agreement is more than reasonable. And the fact that relief will be provided without further delay is an important factor.

Moreover, Plaintiffs believe that ECSI would have raised defenses to class certification that would have presented additional risks to class certification or recovery for members of the Settlement Class. For example, ECSI may have argued that some Settlement Class members' loans were paid by their parents, and thus that such individuals suffered no damages, and a large number of individual inquiries would be necessary to resolve these questions. To be clear, Plaintiffs believe that they would successfully defeat these arguments and would ultimately prevail on the merits, but Class Counsel well know the uncertainty associated with protracted litigation, and they believe that the relief provided for

in the Settlement Agreement reasonably balances the potential recovery at trial with the potential obstacles and pitfalls that could be experienced along the way.

This complexity factor weighs in favor of final of final approval.

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 282, 318 (3d Cir. 1998). In *Prudential*, the Third Circuit held that the district court did not abuse it discretion in finding that 19,000 opt outs—out of 8 million policyholders to whom Prudential sent the class notice—was "truly insignificant." 148 F.3d at 318; *see also In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp 2d 389, 406 (D.N.J. 2006) ("The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair."); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, C.A. No. 08-CV-3610 (CLW), 2015 WL 2383358, at *5 (D.N.J. May 18, 2015), aff'd, 639 F. App.'x 880 (3d Cir. 2016) (approving class settlement and stating, "[t]he number of exclusions and objections are thus exceptionally small in relation to the size of the potential and confirmed class. Such a discrepancy weighs in favor of approval of the settlement."). Here, only one class member has opted out and there are two objections. As discussed above, one of the two objections is narrowly tailored to debt collection allegations the class member has that fall outside of the Release language. ECF No. 75.

The other Objector raises issues about the size of the Settlement Fund, which again is well within range of comparable settlements, and complains that the email notice went to her spam folder. Courts have not found this sort of complaint about email notice concerning. *See, e.g. Carter v. Vivendi Ticketing US LLC*, No. 22-01981, 2023 WL 8153712, at *10 (C.D. Cal. Oct. 30, 2023) ("fact that supplemental notice went to Ms. Lau's junk email folder also does not raise concerns sufficient to deny final approval"), citing *In re Apple iPhone/iPod Warranty Litig.*, 2014 WL 12640497, at *9 (N.D. Cal. May 8, 2014) (overruling objection that one of two email notices of the proposed settlement

ended up in the objector's spam folder, explaining that "[c]ourts routinely approve email notice campaigns and, inevitably, some email messages will end up in a spam folder—just as some postal mail will never reach its intended recipient"); *Dover v. British Airways, PLC*, No. 12-cv-5567, 2018 WL 11412431, at *8 (E.D.N.Y. Oct. 9, 2018) (reasoning that courts regularly approve notice by email and that additional efforts to send by email were made, and some people review spam folders periodically to "see if things have been captured that should not have been," and finding that the Class "received the best effective notice practicable under the circumstances.")

And more importantly, 7.4% of the Settlement Class has filed a claim, a very successful rate. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (citing evidence that claims rates in class settlements "rarely" exceed seven percent, "even with the most extensive notice campaigns"); *see also Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 2:18-CV-1370, 2020 WL 3481458, at *14 (W.D. Pa. June 26, 2020) (finding that a 4% claim rate is not indicative of a negative reaction by the classes overall); *In re Comcast Corp. Set-Top Cable Tele. Box Anti. Litig.*, 333 F.R.D. 364, 386 (E.D. Pa. Sept. 24, 2019) (approving claims made settlement with claims rate of .05%, finding "[a]lthough this is a very low claims rate, an examination of the *Gunter/Prudential* factors demonstrates that the low level of distribution of benefits to the Class does not reflect a failure of Class Counsel to adequately represent the interests of the Class"); *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) (approving settlement with 2% claims rate). *See also Jackson v. Wells Fargo Bank, N.A.*, 136 F.Supp. 3d 687, 702 (W.D. Pa. 2015) (noting even low response rates are not "in any way abnormal given the relatively small individual payouts" and citing Newberg on Class Actions § 12:17 for that proposition).

Third, while discovery exchanged was informal, proposed Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims. Simplicio Decl. ¶ 8. This case settled early in the litigation process before formal discovery took place, but as part of the extensive negotiation

process, ECSI produced documents showing, *inter alia*, the size of the Settlement Class, the identity of Settlement Class members, and the amount of potential damages involved. *Id.* ¶ 6. Class Counsel has litigated and settled numerous other cases against debt collectors for violations of 1692f(1) Statutes, and is knowledgeable about the legal theories, risks, and discovery required. *Id.* ¶¶ 25-27. *See also* ECF No. 60-1, App'x A (chart summarizing other processing fee settlements).

The "sufficient discovery" factor in *In re Gen. Motors* does not require formal discovery; rather, it focuses on whether proposed class counsel had enough information to allow for negotiation of a fair settlement. "What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re Nat'l Football League Players Concussion Inj. Litig.* ("*In re NFL*"), 821 F.3d 410, 439 (3d Cir. 2016), *as amended* (May 2, 2016). Indeed, as the Third Circuit explained, "requiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip—the costs of formal discovery itself—off the table during negotiations. This could deter the early settlement of disputes." *Id.* Here, Class Counsel's experience in successfully litigating and settling similar claims, as well as the records shared in the negotiation process allowed Class Counsel to fully assess the value of the Settlement Class's claims and to negotiate notice and claims-administration programs tailored to maximize relief to Settlement Class members. Simplicio Decl. ¶¶ 7-8. This factor therefore further supports preliminarily approving the Settlement Agreement.

Importantly, Plaintiffs believe that this is not a fact-intensive case that depended on extensive discovery to assess ECSI's potential liability. It is undisputed that ECSI assessed the alleged fees, and Plaintiffs firmly believe that the MPN's governing Plaintiffs' and Settlement Class members' student loans are form contracts the content of which is a matter of public record. Thus, Class Counsel "were aware of the strengths and weaknesses of their case" before engaging in settlement negotiations with

ECSI and without the need for formal discovery. *In re NFL*, 821 F.3d at 436 (internal quotation marks omitted).

Thus, the relevant facts were already known; formal discovery primarily would have shed light on the scope of potential damages, which the parties' informal discovery allowed Proposed Class Counsel to assess. Thus, formal discovery would not have given Plaintiffs or their counsel significantly more information on which to act than what they obtained in the negotiation process. Plaintiffs and their counsel were more than sufficiently informed to appreciate the value of their claims based on the information shared in the negotiation process. *See Douglass v. Optavia LLC*, No. 2:22-CV-00594-CCW, 2022 WL 4281546, at *3 (W.D. Pa. Sept. 14, 2022) ("[A]lthough discovery has not occurred in this case, that fact is insignificant here, where the facts are largely undisputed, and Mr. Douglass's counsel engaged in a substantial investigation into Optavia's digital platforms and their accessibility.").

As to the *fourth, fifth and sixth factors,*, which look to the risks of litigation, the Settlement Agreement reflects the risks Plaintiffs and the Settlement Class would face in litigation. District courts evaluating a proposed class settlement "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Murphy v. Le Sportsac, Inc.*, No. 1:22-CV-00058-RAL, 2023 WL 375903, at *10 (W.D. Pa. Jan. 24, 2023) (internal quotation marks omitted). However, "a court should not conduct a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *Id.* (internal quotation marks omitted). Thus, "the Court need not delve into the intricacies of the merits of each side's arguments, but rather may give credence to the estimation of the probability of success proffered by Class Counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Id.* (quoting *Glaberson v. Comcast Corp.*, No. CV 03-6604, 2015 WL 5582251, at *6 (E.D. Pa. Sept. 22, 2015)).

This case is settling in its early stages; if the Settlement Agreement is not approved, the parties will likely need to litigate multiple dispositive motions and a motion for class certification. The litigation would likely take years to resolve and involve expensive expert discovery. The Parties would need to resolve discovery disputes and incur the expense and burden of preparing for trial. Even if Plaintiffs succeed at class certification and the merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Settlement Class members. Instead, there would be multiple points at which the Settlement Class's claims could be narrowed or dismissed, including trial. *See Weiss v. Mercedes Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (warning that in complex cases, "[t]he risks surrounding a trial on the merits are always considerable").

Class Counsel and Defendant's counsel are experienced in class action litigation, and Class Counsel have litigated and settled numerous pay-to-pay cases arising from the assessment of Processing Fees. Simplicio Decl. ¶¶ 25-29. This, too, supports finding that the Settlement Agreement is fair and reasonable. *See, e.g.*, *In re Gen. Motors*, 55 F.3d at 785-86; *Douglass*, No. 2:22-CV-00594-CCW, 2022 WL 4281546, at *3 (presumption of fairness established in support of preliminary approval in part because "the parties [we]re represented by competent counsel experienced in complex, comparable litigation"); *Klingensmith v. BP Prod. N. Am., Inc.*, No. CIV.A. 07-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (the fact that the settlement "was reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator" supported preliminary approval).

As to the *remaining factors*, which assess Defendant's ability to withstand judgment[4] and the reasonableness of the settlement plan, the proposed allocation plan treats class members fairly. The

---

[4] In the absence of evidence about a defendant's ability or inability to withstand a greater judgment, courts consider this factor to be neutral. *See Serrano v. Sterling Testing Sys., Inc.*, 711 F.Supp. 2d 402, 416 (E.D. Pa. 2010); *Rescigno v. Statoil USA Onshore Prop. Inc.*, No. 3:16-85, 2023 WL 145008, at *11 (M.D. Pa. Jan. 10, 2023).

Settlement defines a clearly identifiable Settlement Class—one ascertainable by a methodological review of ECSI's business records. The Class definition complies with the requirements of the Third Circuit's decision in *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013), and *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012). Simply put, this is not a case where "class members are impossible to identify without extensive and individualized factfinding or 'mini-trials.'" *Marcus*, 687 F.2d at 593.

The proposed Settlement treats all Settlement Class equally and does not provide undue preferential treatment to any individual Settlement Class member. Specifically, the plan of allocation in the Settlement—which is discussed in more detail in the Settlement Agreement—divides the Net Settlement Fund (that is, the Settlement amount minus any deductions for notice and administration costs, class representative service award, and attorneys' fees and costs) on a *pro rata* basis based on the number of relevant fees assessed against an account during the Class Period. In short, the higher number of relevant fees a Settlement Class member incurred, the higher his or her distribution will be.

While members of the Settlement Class were required to make a claim to receive a distribution, as discussed in section IV, *infra*, all received notice and the opportunity to make a claim pursuant to the robust plan devised. While direct distribution of cash awards would have provided every Class Member with a payment, it also would have substantially increased costs, and thus, the claims process was chosen for the excellent value it will provide to Settlement Class Members. A claims process allows for the election of electronic payment options, and thus, avoided the need to mail 552,000 people paper checks – an enormous expensive relative to the small amounts of the fees. Indeed, where settlements provide for claims processes, e-payment election rates are often very high, particularly among younger people, who are believed to make up the substantial majority of this class made up of student loan borrowers. Simplicio Decl. ¶ 33. Because no money will revert to ECSI, but rather, the

14

entire Net Settlement Fund will be distributed to those who made claims, the Settlement Class gets the entire benefit of the cost-savings from this distribution method.

Settlement class members are further treated fairly in the distribution because the plan of allocation rests, entirely, upon accurate, extensive fee data maintained in ECSI's records, which ECSI provided to allow for the administration of this Settlement. *Id.* ¶ 6. Plaintiffs and Class Counsel believe that this plan of allocation is fair and reasonable, and merits final approval. *Id.* ¶ 31.

Additionally, the proposed settlement amount is well within the permissible range in this Circuit and is consistent with settlements in prior similar cases. *See* ECF No. 60-1 App'x A. The relief the Settlement Agreement provides for Class Members is outstanding. ECSI has agreed to create a Settlement Fund of $3.65 million to reimburse Settlement Class members for relevant fees incurred during the Class Period. Plaintiff estimates this amount represents approximately 25% of the maximum amount damages they may have been able to secure at trial. Simplicio Decl. ¶ 11.

That maximum damages amount represents, essentially, all Processing Fees charged on phone or online loan payment transactions. In addition to the risks of litigating the merits, discussed below, there are risks that damages would be significantly reduced even if Plaintiffs prevailed. For example, ECSI would have likely argued that a proper damages valuation should not be all amounts paid, but rather, that its out-of-pocket costs associated with the Processing Fees needed to be deducted from any amounts paid, or that equitable considerations should be given to the fact that the borrowers may have avoided steeper late fees. Given this uncertainty in total damages, this recovery of 25% of best-case scenario damages is appropriate. Indeed, it is well within the range of recovery routinely approved by courts in this Circuit. *See, e.g., Teh Shou Kao v. CardConnect Corp.*, No. 16-CV-5707, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2021) (approving settlement representing approximately 29 percent of the damages the class could have recovered at trial, as calculated by the plaintiff); *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 2:18-CV-1370, 2020 WL 3481458, at *17 (W.D. Pa. June 26, 2020) (settlement fund

representing approximately 10-20 percent of the total amount plaintiffs could recover at trial to be reasonable in light of the risk of continued litigation); *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018) (finding settlement representing 25 percent of the maximum amount recoverable at trial to fall "well within the range of reasonableness when considering the risks of continued litigation"); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015) (finding settlement representing approximately 24 percent of estimated actual damages reasonable and noting that the court has "upheld far smaller settlements"); *Nichols v. SmithKline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616 at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement fund representing between 9.3% and 13.9% of damages estimates as "consistent with those approved in other complex class action cases"); *In re Ravisent Techs., Inc. Secs. Litig.*, No. Civ. A. 00-CV-1014, 2005 WL 906361 at *9 (E.D. Pa. Apr. 18, 2005) (finding settlement of 12.2% to be "within the range of reasonable recovery for a securities class action"); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement that "represents only about 5.35% of the estimated damages for the entire class period"). Moreover, 25% of damages is well within the range of the percentage of damages achieved in settlements of other similar cases arising from the assessment of Processing Fees. *See* App'x A.

In light of the novel issues present in this case, as well as the legal complexity entailed in the prosecution and defense of this case and the unpredictability associated with class certification proceedings, a lengthy trial and any appellate proceedings (both under Rule 23(f) and on the merits), Plaintiff submits that the result achieved is excellent under all the circumstances and the *Girsh* factors are satisfied.

### B. The Proposed Form and Method of Class Notice Satisfy Due Process.

The Settlement Agreement's notice program was robust and easily satisfies due process. Rule 23(e)(1) ensures that absent class members' due process rights are enforced by entitling class members to reasonable notice of a proposed settlement. *See Manual For Complex Litig.* §§ 21.312, 21.631 (4th ed.

2011). "[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) (internal quotation marks and citation omitted).

In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Specifically, Rule 23(c)(2)(B) requires that the "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, as the Court already found at the preliminary approval stage, the form and content of the proposed Notices satisfy and exceed all these requirements. *See* D.E. 60-1, Ex. 1, Sub-Exs. A1-A3. The Notices informed absent class members of the pendency of the litigation, the Court's preliminary certification of the Settlement Class, the terms of the Settlement Agreement, detailed instructions on how to make a claim, Settlement Class Members' right to opt out or object and the time for doing so, the time and location of the Final Approval Hearing, Class Counsel's expected fee application, the expected request for service awards for the named Plaintiffs, links to the Settlement Website, the toll-free number to call for questions, and other information related to the Settlement Agreement. This content was more than sufficient because it "fairly apprise[s] the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the]

proceedings." *Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotations omitted). And under the Settlement Agreement and the Notice Program, Settlement Class members had 60 days to make a claim, opt out, or object.

Further, the Notice Program was designed to be the best notice practicable, and it is tailored to take advantage of the information ECSI has available about members of the Settlement Class. The Notice Program consisted of two stages, Initial Notice and Supplemental Notice. *See generally* D.E. 60-1 Ex. 1, § 10. The Initial Notice stage was simply a typical notice process; it was intended to provide Settlement Class Members all the information they needed to make a decision about whether to remain in the class, make a claim, file an objection or exercise opt-out rights. During this stage, the Settlement Administrator provided direct e-mail notice substantially in the form of Exhibit 1-A1 to all known Settlement Class members at all known email addresses as indicated in ECSI's business records. For the minority of Settlement Class members for whom ECSI did not have a valid email address, a postcard notice substantially in the form of Exhibit 1-A2 was sent to their last known mailing address. These Notices apprised Class Members of the deadline to make a claim, file an objection, or exclude themselves, as well as refer Class Members to the Settlement Website. There, the Settlement Administrator published deadlines, a full copy of the Settlement Agreement and other pertinent documents, and provided the long-form notice, which contains frequently asked questions, substantially in the form of Exhibit A3. The Settlement Website also contained a place where Settlement Class Members could submit claims. Class members were also provided with a toll-free telephone line for Settlement Class members to call with settlement and claims-related inquiries.

The Supplemental Notice stage was designed to ensure Settlement Class Members do not miss the opportunity to file a claim. The Settlement Administrator provided additional email reminders during the notice period, encouraging those Settlement Class Members that had not yet made a claim to the Settlement Website to do so. This multi-pronged notice strategy ensured that virtually all

Settlement Class members received Initial Notice, and most received additional reminders. Moreover, it is eminently practicable, as it avoids the high administration costs of mailed notices to all Settlement Class members without sacrificing the reach and effectiveness of the Notice Program. Indeed, based on their significant experience, Class Counsel and the proposed Claims Administrator believe that the supplemental targeted social media advertising provided for in the Notice Program increased the effectiveness of the claims process by providing additional reminders to Class Members beyond the initial notice. Simplicio Decl. ¶ 33.

All of these efforts and safeguards resulted in a near-universal, remarkable reach rate of 99.99%. As the Settlement Administrator attested, this rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[5] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[6] In sum, the Notice Program exceeds the requirements of Rule 23 and due process, and Plaintiffs are confident it has been the best notice practicable.

## VI.    CONCLUSION

For all these reasons, the Court should enter the Proposed Final Approval Order: (1) granting Plaintiffs' Motion finally approving the Settlement; (2) finally certifying the Settlement Class; (3) dismissing all class and individual claims on the merit with prejudice and without costs to Defendant; (4) retaining jurisdiction over this action for the purpose of interpretation and enforcement of the Settlement Agreement, including oversight of settlement administration and distribution of settlement funds; and (5) entering final judgment as to these matters.

Respectfully submitted,

---

[5] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[6] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

Dated: June 10, 2024

/s/ Patricia M. Kipnis
Patricia M. Kipnis
**BAILEY & GLASSER LLP**
925 Haddonfield Rd, Suite 300
Cherry Hill, NJ 08002
Tel: (215) 274-9420
Email: pkipnis@baileyglasser.com

James L. Kauffman (DC 1020720) (PHV)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, D.C. 20007
Tel: (202) 463-2101
Email: jkauffman@baileyglasser.com

Kristen G. Simplicio
Hassan A. Zavareei
Glenn E. Chappell
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-0900
Email: ksimplicio@tzlegal.com
Email: hzavareei@tzlegal.com
Email: gchappell@tzlegal.com

*Counsel for Plaintiffs and the proposed Settlement Class*