## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REBECCA NGUYEN, TAMICA
BREWSTER, KYLE STRICKENBERGER,
MICHELLE CAYNOR, *on behalf of
themselves and all others similarly situated*,

        Plaintiffs,

        v.

EDUCATIONAL COMPUTER SYSTEMS,
INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:22-cv-1743

Magistrate Judge Patricia L. Dodge

## MEMORANDUM OPINION[1]

Presently before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (ECF 77). For the reasons that follow, Plaintiffs' motion will be granted.

### I.      Relevant Procedural History

Plaintiffs Rebecca Nguyen, Tamica Brewster and Kyle Strickenberger, in their own right and on behalf of all others similarly situated, commenced this action by filing a Complaint on December 6, 2022.

In this class action, Plaintiffs allege: (1) violations of the implied covenant of good faith and fair dealing embedded in every contract; (2) violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788.14(b) and § 1788.17, and the laws of seven other states whose debt-collection laws are materially uniform; (3) violations of §

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

1788.13(e) of the Rosenthal Act; (4) violations of California's Student Borrower Bill of Rights, Cal. Civ. Code §§ 1788.100 et seq., Illinois's Student Loan Servicing Rights Act, 110 Ill. Comp. Stat. 992/1-1 et seq., and the laws of nine other states whose student loan borrower bills of rights are materially uniform; (5) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (6) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 et seq.

After ECSI sought an extension of time to respond to the Complaint, the parties jointly filed a motion to stay this case pending mediation (ECF 35). The Court granted this motion and entered a stay (ECF 36). Subsequent motions to continue the stay (ECF 37, 39) were also granted by the Court (ECF 41). The stay was ultimately lifted by Order dated August 17, 2023 (ECF 43).

After multiple motions of extension of time to respond to the Complaint were granted, ECSI filed a Notice of Settlement on November 6, 2023. Plaintiff subsequently filed their First Amended Complaint on January 5, 2024 (ECF 59). Among other things, the First Amended Complaint added Michelle Caynor as a named plaintiff.

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement was also filed on January 5, 2024 (ECF 60) and was granted by Order dated January 23, 2024. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (ECF 77) was docketed on June 10, 2024. A final hearing was held on June 24, 2024.

## II.     Relevant Factual Background and Proposed Settlement

### A.   <u>Underlying Claims, Investigation and Negotiations</u>

Plaintiffs assert that, among other student loans, ECSI services Perkins loans, which are offered by educational institutions and funded in whole or in part by the federal government. These loans are governed by a standardized federal Master Promissory Note ("MPN"). The MPNs do not

expressly authorize "convenience fees" or "processing fees" (collectively, "Pay-to-Pay Fees")

Plaintiffs allege that ECSI violates state debt collection and consumer protection laws and breaches the implied covenant of good faith and fair dealing in borrowers' standardized student loan agreements by unlawfully and deceptively charging borrowers each time a consumer borrower makes a student loan payment online or over the phone. According to Plaintiffs, these additional Pay-to-Pay Fees do not reflect ECSI's cost of providing such services. Rather, they claim, ECSI unlawfully inflates its costs of processing loan payments online or by phone above the actual cost and imposes Pay-to-Pay Fees on borrowers to create a windfall for itself.

ECSI denies all claims asserted against it in this action, that it has engaged in any wrongdoing, that it is liable for any claims asserted in this action, and that Plaintiffs and the putative class members are entitled to any relief.

The parties began to discuss the possibility of a classwide settlement shortly after the lawsuit was filed in December 2022. Their discussions included the claims and defenses, their respective positions on the issues and possible settlement parameters. They also discussed the discovery needed to assess classwide damages and undertook efforts to retrieve, exchange and review information.

The parties attended a mediation before the Hon. Lawrence F. Stengel on August 15, 2023. In advance of the mediation, ECSI provided informal discovery regarding the size of the settlement class and the amount of Pay-to-Pay Fees collected by ECSI since December 2018 for the various classes and claims pled in the Complaint. Although a settlement was not reached during the mediation, the parties remained in regular communication with each other and with the mediator about the possibility of settlement. ECSI conducted additional internal investigation and produced additional informal discovery to aid in settlement negotiations. Eventually, the parties reached a

settlement in principal and proceeded to negotiate the written terms of a settlement agreement. The parties did not discuss any award of attorneys' fees and expenses, or any service awards, until after the material terms of the Settlement were agreed upon.

### B. Relevant Terms of Settlement Agreement

The Class Settlement and Release Agreement ("Settlement Agreement") (ECF 60-1) was executed as of January 5, 2024. It defines the class as "all natural persons (1) within the United States who paid a fee to Defendant Heartland ECSI ("Defendant") for (2) optional payment services to make a Perkins student loan payment by telephone, IVR, or the internet ("Processing Fee"), between December 6, 2018, through and including October 31, 2023." It estimated that the class consists of 557,773 borrowers, who were assessed a total of $14,882,703.90 in Processing Fees during the Class Period.

As set forth in Paragraph 2.7 of the Settlement Agreement, ECSI agreed to pay the sum of three million, six hundred and fifty thousand dollars ($3,650,000) in full settlement of all claims that were asserted or could have been asserted in the Action (the "Settlement Fund"). This represents 25% of the amount collected in Processing Fees from approximately 552,293 Perkins loans borrowers by ECSI between December 6, 2018 and October 31, 2023. After deducting Administrative Costs,  Attorneys' Fees and Costs, as well as class representative service awards, the entire amount remaining in the Settlement Fund will be distributed pro rata to those Settlement Class Members who submit a timely claim. No amount of the Settlement Fund will revert to ECSI; in the event that any funds remain, a secondary distribution to class members will be made, and if needed, will be distributed to a cy pres recipient.

The parties agreed that the Settlement Payments would be made on a per-account basis. Co-borrowers on a single account shall be treated as a single Settlement Class Member and, upon

submission, would be entitled to receive a single, shared Settlement Payment. Only one Settlement Payment would be made per student loan account and each Settlement Payment would be made payable to co-borrowers listed on an account according to ECSI's records.

It was further agreed that with respect to payment of Attorneys' Fees and Expenses, Plaintiff's counsel would apply to the Court for a distribution of no more than one third (33.33%) of the Settlement Fund, plus litigation expenses, which sum (one-third of the Settlement Fund plus expenses) shall include all Attorneys' Fees and Expenses incurred by Plaintiffs. Class Representatives will each receive an award ("Incentive Award") of no more than ten thousand dollars ($10,000), subject to approval by the Court, in addition to each Class Representative's Settlement Payment. The Incentive Awards were to be paid out of the Settlement Fund.

Kroll LLC ("Kroll"), an experienced provider of class action settlement services, was appointed as the Settlement Administrator. The Settlement Agreement includes substantial detail concerning notice to class members and overall administration of the process.

### C.  **Subsequent Events**

Thereafter, Kroll began its administrative duties. The Affidavit of Scott M. Fenwick, a Senior Director at Kroll, outlines the duties in which Kroll engaged, including (a) receiving and analyzing the Class List from Defendant's counsel; (b) creating a Settlement Website with online claim filing capabilities; (c) establishing a toll-free telephone number; (d) establishing a post office box for the receipt of mail; (e) preparing and sending the Postcard Notice via first-class mail; (f) preparing and sending the Email Notice; (g) receiving and processing mail from the United States Postal Service ("USPS") with forwarding addresses; (h) receiving and processing undeliverable mail, without a forwarding address, from the USPS; (i) receiving and processing Claim Forms; (j) receiving and processing opt out requests and objections; and (k) such other tasks as counsel for

the parties or the Court requested. Following all Notice re-mailings, Kroll has reason to believe that Notice likely reached 537,742 of the 537,769 persons to whom Notice was mailed and/or emailed, which equates to a reach rate of the direct notice of approximately 99.99%.

The Claim Filing Deadline was May 28, 2024. As of June 20, 2024, Kroll had received fifty-seven (57) timely Claim Forms through the mail and 40,034 Claim Forms filed electronically through the Settlement Website, for a total of 40,091 timely Claim Forms received. Kroll has received twenty-nine (29) untimely Claims Forms through the mail. Kroll is still in the process of reviewing and validating Claim Forms. Based on the foregoing, Kroll estimates that the claims filing rate is 7.45% of Settlement Class Members who likely received Notice.

As of June 20, 2024, Kroll has billed $18,925.53 for services and fees incurred in the administration of this matter. Kroll estimates that it will bill an additional $176,225.50 to complete the administration of this Settlement. If Class Counsel is awarded the full payment for Attorneys' Fees and Expenses ($1,216,667.67 plus $10,403.04 in litigation expenses), plus administrative expenses in the amount of $195,151.03 and $40,000 for the Incentive Awards for Class Representatives, there will be approximately $2,187,779.26 remaining in the Settlement Fund for Settlement Payments. As of June 20, 2024, 40,091 Settlement Class Members have submitted timely Claim Forms, for an estimated total of $1,103,179.04 in Processing Fees.

The exclusion deadline and the objection deadline were June 3, 2024. Kroll received seven (7) timely exclusion requests and two (2) objections to the Settlement. One objection was resolved prior to the hearing on June 24, 2024; the parties advised at the hearing that the second objection has also been resolved.

### III.    Discussion

"A court presented with a joint request for approval of a class certification and settlement must separate its analysis of the class certification from its determination that the settlement is fair." *Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *5 (W.D. Pa. June 26, 2020) (quoting *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 410 (E.D. Pa. 2010)). To certify the proposed settlement class, the Court must ensure that the putative class satisfies "the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirements[.]" *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995)). After certification, the Court then must "review the settlement agreement to determine whether it is 'fair, reasonable, and adequate' under Fed. R. Civ. P. 23(e)(2)." *Id.*

The Court will first address whether final class certification should be granted, and then turn to the fairness of the settlement. This will be followed by a brief discussion of the objections. The reasonableness of Plaintiffs' attorneys' fees and costs, and the request for Plaintiffs' service awards, is addressed in a separate Opinion and Order.

### A.    <u>Final Class Certification</u>

Motions to certify a class are governed by Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Every class action must satisfy the requirements of Rule 23(a) as well as those of Rule 23(b)(1), (2) or (3). The Third Circuit has instructed district courts to conduct a "rigorous analysis" of the arguments and evidence presented to decide whether class certification is appropriate. *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190-91 (3d Cir. 2020).

Here, the final certified settlement class is defined as follows:

All natural persons (1) within the United States who paid a fee to Defendant Heartland ECSI ("Defendant") for (2) optional payment services to make a Perkins

student loan payment by telephone, IVR, or the internet ("Processing Fee"), between December 6, 2018, through and including October 31, 2023." It estimated that the class consists of 557,773 borrowers, who were assessed a total of $14,882,703.90 in Processing Fees during the Class Period.

Based on this definition, the settlement class consists of 557,773 borrowers.

As discussed below, the settlement class satisfies the threshold Rule 23(a) requirements of "numerosity, commonality, typicality, and adequacy of representation, " *In re Gen. Motors Corp.*, 55 F.3d at 778, as well as the Rule 23(b)(3) requirements that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The settlement class also complies with the Third Circuit mandate that that a Rule 23(b)(3) class be "currently and readily ascertainable." *Marcus v. BMW of North Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

1. Rule 23(a) prerequisites

*Numerosity*

Rule 23(a)(1) requires that a purported class be "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). The Third Circuit has explained that "although 'no minimum number of plaintiffs is required to maintain a suit as a class action,' a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

Here, the size of the class, which is composed 557,773 borrowers, satisfies the numerosity requirement.

*Commonality*

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied so long as the class members "share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). To be sure, commonality is not met merely upon a showing that the claims of the class members "depend upon a common contention." Rather, "that common contention . . . must [also] be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The Settlement Class Members in these actions share multiple questions of fact and law that are capable of class-wide resolution. The claims asserted by Plaintiffs on behalf of the entire settlement class turn on common questions of fact about ECSI's collection of Processing Fees from each member of the class when they made payments on their federal Perkins loans. Plaintiffs assert that the standardized federal Master Promissory Note common to all Settlement Class Members does not expressly authorize the assessment of such fees, and that in doing so, ECSI breached its contractual duty of good faith. In addition, Plaintiffs assert, ECSI violated state debt collection statutes with respect to borrowers in eight states, state student borrower statutes in eleven states and state consumer protection statutes in California and Illinois. Among other common issues include whether ECSI was in privity with the Settlement Class Members, whether the Processing Fees were in excess of the actual costs of the fees and whether the Master Loan Agreements authorized the fees assessed by ECSI.

Thus, because the Settlement Class Members' claims share common questions of fact and law, the commonality requirement is satisfied.

### *Typicality*

Rule 23(a)(3) asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "ensur[es] that the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) (citations omitted). This requirement is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (citation omitted).

As noted above, Plaintiffs and the Settlement Class Members share the same types of claims. The claims of the Plaintiffs and those of the Settlement Class Members both stem from similar practices and course of conduct by ECSI. It is uncontroverted that all paid a fee to ECSI for optional payment services to make a Perkins student loan payment by telephone, IVR, or the internet between December 6, 2018, through and including October 31, 2023. In order to prove all of the claims at issue, the named Plaintiffs must establish that the fees were not authorized by the standard contracts held by all Settlement Class Members.

Thus, the typicality requirement is satisfied.

### *Adequacy of Representation*

Finally, Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation depends on two

factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Both requirements are met here.

The named Plaintiffs retained competent counsel who are experienced in the prosecution of class actions, deeply familiar with the legal and factual issues involved in this matter and highly qualified. Class counsel have litigated and settled numerous pay-to-pay cases arising from the assessment of Processing Fees. *See* Simplicio Decl. ¶¶ 25-29. Class counsel have demonstrated a high level of skill and competence in conducting the litigation to date and have invested a number of hours in pursuit of the claims of the class. These efforts have included, but are not limited to, investigating the claims prior to bringing suit and preparing complaints and other pleadings. Further, Plaintiffs' counsel engaged in lengthy and complex arms-length negotiations with ECSI with the able assistance of a mediator, which ultimately resulted in a settlement.

Additionally, Plaintiffs have demonstrated that they do not have interests that are adverse to the interests of any other Settlement Class Member. Indeed, Plaintiffs and the Settlement Class share common interests in seeking compensation for the alleged harm sustained as a result of ECSI's conduct. By advancing their claims, Plaintiffs have also advanced the claims of other Settlement Class Members. *See Vines v. Covelli Enters.*, 2012 WL 5992114, at *4 (W.D. Pa. Nov. 30, 2012) ("There is no discernible conflict of interest in the record or otherwise between Vines and the other class members, and given the factual and legal similarities between the claims, Vines is an adequate class representative.").

Therefore, all of the Rule 23(a) prerequisites are met.

2. Rule 23(b)(3) requirements

Plaintiffs seek certification under Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Third Circuit has explained that "Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement because the former, although similar, is 'far more demanding' than the latter. *Reinig*, 912 F.3d at 127 (quoting *In re Warfarin*, 391 F.3d at 528). This element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)). The focus of the predominance inquiry is "on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez*, 885 F.3d at 195 (quoting *In re Hydrogen Peroxide*, 552 F.3d at 311-12).

Here, as articulated above, common questions of fact and law predominate over any questions that may affect individual Settlement Class Members. Both Plaintiffs and all members of the Settlement Class are borrowers who paid a fee to ECSI for optional payment services to make a Perkins student loan payment by telephone, IVR, or the internet. Plaintiffs and the Settlement Class have the same interest in establishing liability, and they all seek damages for the

12

same harm. Absent the proposed settlement, they would rely on the same evidence of ECSI's alleged violations of law and on class-wide damage models to show the fact and amount of harm. Therefore, the predominance prong of Rule 23(b)(3) is satisfied.

To determine whether the superiority requirement is satisfied, the court evaluates, "in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 534 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)). In making this evaluation, the Court considers "the class members' interests in individually controlling litigation, the extent, and nature of any litigation, the desirability, or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re Nat'l Football League*, 821 F.3d at 435 (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)).

When "[c]onfronted with a request for settlement-only class certification," the Court need not consider the final factor—i.e., difficulties in managing a class action—because "the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As for the remaining factors, it is readily evident that this class action is superior to other available methods. It is neither economically feasible nor judicially efficient for more than approximately 40,094 Class Members who have submitted claims, let alone the 537,769 total Class Members, to pursue individual claims against ECSI. A class-wide settlement will not only achieve resolution of the class members' claims without multiple lawsuits and trials, but also ensures that similarly situated members are treated uniformly.

Simply put, a class action is the superior mechanism for resolving this controversy both in terms of efficiency and fairness.

The Third Circuit has explained that "[a]scertainability is an 'essential prerequisite,' or an

*implied* requirement, of Rule 23, 'at least with respect to actions under Rule 23(b)(3).'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 n.5 (3d Cir. 2015) (quoting *Marcus,* 687 F.3d at 592-93). Under this two-fold inquiry, a plaintiff must establish that: "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).

In these cases, the class has been defined with objective criteria. The settlement class is composed of those individuals who were assessed Processing Fees in connection with payments made on Perkins loans. A reliable mechanism was used to determine whether putative class members fell within the class definition. The class list was identified based on ECSI's own business records. As explained in the Affidavit of Scott M. Fenwick of Kroll (ECF 77-1), Kroll received one (1) data file from ECSI, which contained

> 1,979,282 records that included school codes, names, SID numbers, fees paid, mailing addresses, email addresses, dates of birth, and the last four digits of Social Security Numbers for Settlement Class Members. Kroll undertook several steps to reconcile the list and compile the eventual Class List for the emailing and mailing of the Initial Notice. This included standardizing address information, de-duping and performing a roll up of records with multiple names, mailing addresses, dates of birth, and the last four digits of Social Security Numbers. As a result of this data cleaning process, Kroll identified 537,769 unique records.

(ECF 77-1 ¶ 4.) Thus, there is no question that the settlement class is "currently and readily ascertainable." *Marcus*, 687 F.3d at 593.

Because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, final class certification of the settlement class is appropriate.

### B. <u>Fairness of the Settlement</u>

Next, the Court must determine whether the Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e). Fed. R. Civ. P. 23(e)(2). "Where, as here, the parties seek

simultaneous class certification and settlement approval, courts should be 'even more scrupulous than usual when they examine the fairness of the proposed settlement.'" *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 322 (3d Cir. 2019) (quoting *In re Prudential*, 148 F.3d at 316). Such an exacting review "ensure[s] that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members." *Id.* at 326 (quoting *In re Prudential*, 148 F.3d at 317).

At the same time, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp.*, 55 F.3d at 784 (citations omitted). As a result, when reviewing a proposed settlement, courts in this circuit apply a presumption of fairness as long as certain conditions are satisfied. This analysis begins with a determination of whether the presumption of fairness applies, followed by an evaluation of the settlement given the relevant factors and considerations under Third Circuit precedent.[2]

---

[2] Effective December 1, 2018, Rule 23(e)(2) was amended to include the following considerations to guide a court's determination of the fairness, reasonableness, and adequacy of a settlement. It requires a determination of whether:

>　(A) the class representatives and class counsel have adequately represented the class;
>　(B) the proposal was negotiated at arm's length;
>　(C) the relief provided for the class is adequate, taking into account:
>>　(i) the costs, risks, and delay of trial and appeal;
>>　(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>　(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>　(iv) any agreement required to be identified under Rule 23(e)(3); and
>　(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Advisory Committee Notes recognize that before the addition of these explicit consideration factors to Rule 23(e)(2), circuit courts had developed their own lists of factors to determine whether a settlement was fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The Advisory Committee Notes also

1.   <u>The presumption of fairness applies</u>

The Third Circuit has instructed courts to apply "an initial presumption of fairness . . .

where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery;

(3) the proponents of the settlement are experienced in similar litigation; and (4) only a small

fraction of the class objected.'" *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp.*

*Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). All of these factors are satisfied here.

The settlement negotiations were conducted over multiple sessions, beginning shortly after

Plaintiffs filed their Complaint. After obtaining a series of extensions of court deadlines, the parties

engaged in extensive arm's length discussions. They also sought the assistance of a retired federal

judge who served as a neutral mediator. (Simplico Decl. ¶¶ 5-10 (ECF 60-1).)

The parties engaged in sufficient discovery to inform their negotiations before a settlement

was reached. ECSI produced documents that reflected the size of the settlement class and the

identify of its members, as well as the amount of the potential damages. This is not a fact-intensive

case given that it is undisputed that ECSI assessed the Processing Fees and more formal discovery

would not have provided substantially more information than that which was informally

exchanged. Thus, there was sufficient discovery for class counsel to conduct a thorough

investigation and analysis of Plaintiffs' claims. *See, e.g., In re Nat'l Football League Players*

*Concussion Inj. Litig.,* 821 F.3d 410, 439 (3d Cir. 2016), *as amended* (May 2, 2016) (relevant issue

is whether class counsel developed enough information to sufficiently appreciate the value of the

---

explain: "The goal of this amendment is not to displace any factor, but rather to focus the court
and the lawyers on the core concerns of procedure and substance that should guide the decision
whether to approve the proposal." *Id.* Notwithstanding the amendment of Rule 23(e)(2), the Third
Circuit continues to advise district courts to assess the fairness, reasonableness, and adequacy of a
settlement applying the *Girsh* factors, the relevant *Prudential* considerations, and the *Baby
Products* direct benefit consideration. *See In re Google Inc.*, 934 F.3d at 329.

claims). Plaintiffs conducted sufficient investigation to allow them to evaluate the strengths and weaknesses of their claims and the ability of Defendants to fund a settlement.

Additionally, as  previously discussed, Plaintiffs' counsel is highly experienced in similar class action litigation, and counsel for ECSI capably defended their interests in this case.

Finally, out of the 537,742 Settlement Class Members who received notice and the 40,091 Settlement Class Members who have submitted claim forms, only two objections to the proposed settlement were asserted, both of which were later withdrawn. Only seven class members have chosen to opt-out.

Given these factors, the proposed settlement is entitled to a presumption of fairness.

2.   The *Girsh* factors favor approval

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit directed district courts to consider nine factors ("*Girsh* factors") in evaluating the fairness of a class-wide settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157 (internal quotation marks and ellipses omitted). The Court "must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

*Complexity, expense, and likely duration of the litigation*

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant*, 264 F.3d at 233. This factor promotes approval of the settlement if a

case requires "complex and protracted discovery, extensive trial preparation, and difficult legal and factual issues." *Id.*

If this litigation were to continue, it is virtually certain that it will be protracted and costly. Significant complex factual and legal issues remain to be resolved. The parties would be required to complete fact and expert discovery, followed by the possibility of dispositive motions. Class certification would have to be addressed, which could include not only extensive briefing but an evidentiary hearing likely to last multiple days. Even if the Court certified a class, it is possible that the class could be decertified or modified prior to trial. The trial itself would be lengthy and subject to appeal by the non-prevailing party or parties, adding additional layers of delay and expense. It is also possible that Plaintiffs would not prevail, would obtain a less favorable outcome or that ECSI could not pay a judgment even if achieved.

Because the proposed settlement permits the parties to avoid the significant expenditure of time and resources while providing a recovery to the settlement class, this factor supports approving the settlement. *See e.g., Jackson v. Wells Fargo Bank, N.A.*, 136 F.Supp.3d 687, 701 (W.D. Pa. 2015); *Klingensmith v. Max & Erma's Rest., Inc.*, 2007 WL 3118505, at *4 (W.D. Pa. Oct. 23, 2007); *Frederick v. Range Resources-Appalachia, LLC*, 2011 WL 1045665, at *4 (W.D. Pa. Mar. 17, 2011.)

<u>*Reaction of the class*</u>

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Warfarin*, 391 F.3d at 536. One metric to assess this factor is "the number of objectors . . . in light of the number of notices sent and claims filed." *Cendant*, 264 F.3d at 234. *See also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15 (3d Cir. 1993) (silence is "tacit consent" to settlement); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485

(E.D. Pa 2010).

Notice of the proposed settlement and the manner in which to submit a claim, opt-out of the settlement or lodge an objection was timely sent by the Settlement Administrator and received by 537,742 Settlement Class Members. Of that number, 40,091 claim forms were received, which represents about 7.4% of the Settlement Class. This provides evidence that a significant number of class members approve and value the proposed settlement. *See, e.g.*, *Sullivan v DB Invs., Inc.*, 667 F.3d 273, 339 n.60 (3d Cir. 2011) (citing evidence that claims rates rarely exceed seven percent). Moreover, only two objections were asserted, both of which were later withdrawn, while seven members opted-out of the settlement. The small number of objections as compared to the size of the class reflects substantial support for the terms of the settlement, and as such, meets the second *Girsh* factor.

### Stage of proceedings and amount of discovery completed

Through the "lens" of the third *Girsh* factor, the stage of the proceedings and the amount of discovery competed, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Prudential*, 148 F.3d at 319 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 813).

As previously discussed, class counsel investigated and analyzed Plaintiffs' claims. While this case settled at an early stage, the parties nonetheless engaged in informal discovery that reflected, among other things, the size of the class and identity of its members, as well as the potential damages. Through these efforts, class counsel, who is experienced in class action litigation, including the nature of the claims at issue, achieved sufficient information to evaluate the strengths and weaknesses of these claims. This shows that Plaintiffs' counsel had a sufficient

appreciation of the relevant facts and the merits of the claims asserted.

The third *Girsh* factor is therefore satisfied.

<u>*Risks of establishing liability and damages*</u>

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin*, 391 F.3d at 537. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp.*, 55 F.3d at 814.

As reflected in the Settlement Agreement, Plaintiffs and the Settlement Class face risks in continuing to litigate this matter. A finding of liability, obtaining a judgment and recovering on any judgment obtained are all matters that remain uncertain. Because the settlement occurred at an early stage in the litigation, it is likely that ECSI would proceed with dispositive motions and would oppose any motion for class certification. Indeed, as in any contested class action, there remain multiple hurdles to navigate in order to even advance to trial, including the completion of fact and expert discovery that further analyzes Plaintiffs' position, obtaining class certification, facing the possibility of an appeal of certification or subsequent decertification and achieving a successful outcome on any dispositive motions. Plaintiffs would then have to prevail at trial and defeat any appeal that might be taken from a favorable outcome. This would take years to accomplish with an uncertain outcome.

Given these factors, it is necessary to balance the inherent risks associated with continuing to litigate these cases against the certainty and immediacy of a recovery through settlement and the benefits that the Settlement Class Members will receive. *In re Prudential*, 148 F.3d at 317.

Here, "the complexities and uncertainties of this litigation strongly warrant granting final approval of the Settlement." *See In re PNC Fin. Serv. Grp.*, 440 F. Supp. 2d 421, 435 (W.D. Pa. 2006) ("each area of contention presents an appreciable degree of risk in plaintiffs' ability to establish a recovery. In contrast, the proposed partial settlement removes any uncertainty and provides the class with the immediate tangible benefit of a substantial settlement.").

On balance, the Court concludes that the proposed settlement is fair and reasonable and provides significant benefit to the Settlement Class Members while avoiding the uncertainty of continued and protracted litigation. Thus, the fourth and fifth *Girsh* factors are satisfied here.

*Likelihood of obtaining and keeping class certification through trial*

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. While "the standard for certification is the same for settlement classes as for conventional classes," *In re Gen. Motors Corp.*, 55 F.3d at 818, this risk remains a relevant consideration for conventional classes because "[a] district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In re Warfarin*, 391 F.3d at 537. By contrast,  in a settlement class, there are no such "management problems for the proposal is that there be no trial." *In re Nat'l Football League*, 821 F.3d at 440.

While this factor does not weigh as significantly in the settlement of a class action, *see In re Prudential*, 148 F.3d at 321, it is evident that obtaining and maintaining class certification poses substantially more risk than providing a remedy to class members through settlement. Even if certification of a class is achieved, continued discovery and resolution of legal issues could lead to decertification or modification of the class. *See* Fed. R. Civ. P. 23(c)(l)(C). In turn, this inevitably would result in further delay and expense, as well as an uncertain outcome. Moreover,

if a class is not certified, it is uncertain that individual settlement class members possess the resources and financial ability to pursue their claims. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits[.]").

Here, there is an immediate benefit to Settlement Class Members as opposed to an uncertain result that may only be achieved through protracted and expensive litigation. Thus, this factor weighs strongly in favor of granting final approval of the settlement.

### Ability to withstand a greater judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant*, 264 F.3d at 240. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re National Football League*, 821 F.3d at 440.

This factor is neutral here as no evidence was submitted about ECSI's ability or inability to withstand a greater judgment. *See Serrano*, 711 F. Supp. 2d at 416; *Rescigno v. Statoil USA Onshore Prop. Inc*., No. 3:16-85, 2023 WL 145008, at *11 (M.D. Pa. Jan. 10, 2023).

Thus, the seventh *Girsh* factor neither favors nor disfavors approval.

### Reasonableness of the settlement

The eighth and ninth *Girsh* factors assess "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* This assessment requires comparing "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing" with "the amount of the

proposed settlement." *In re Gen. Motors*, 55 F.3d at 806. As noted in *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013):

> Settlements are private contracts reflecting negotiated compromises. *Sullivan,* 667 F.3d at 312. The role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole.

*Id.* at 173-74.

The Settlement Class has been easily ascertainable by the comprehensive review of ECSI's business records. The proposed settlement treats all Settlement Class Members equally without preferential treatment. The Settlement Agreement provides for a Settlement Fund of three million, six hundred and fifty thousand dollars ($3,650,000). Plaintiff estimates this amount represents approximately 25% of the maximum amount of damages that they may have been able to secure at trial. Simplicio Decl. ¶ 11. That amount represents, essentially, all Processing Fees charged on phone or online loan payment transactions. As Plaintiffs note, "the proposed settlement amount is well within the permissible range in this Circuit and is consistent with settlements in prior similar cases." (ECF 77 at 20.)

Under the terms of the Settlement Agreement, the Net Settlement Fund consists of the amount available for distribution to the Settlement Class Members after payment of Administrative Costs, Court-appointed attorneys' fees and expenses and Incentive Awards. The Settlement Agreement provides for Settlement Payments on a pro rata basis based on the number of relevant fees assessed against an account during the Class Period. While members of the Settlement Class were required to make a claim to receive a distribution, all received notice and the opportunity to

make such a claim. Although direct distribution of cash awards would have provided every Class Member with a payment, it also would have substantially increased costs.

Because no money will revert to ECSI, the entire Net Settlement Fund will be distributed to those who made claims. Settlement Class Members are further treated fairly in the distribution because the plan of allocation rests entirely on the fee data maintained in ECSI's records which it provided to allow for the administration of this Settlement.

There are risks that damages would be significantly reduced even if Plaintiffs prevailed, including the possibility that ECSI's out of pocket costs associated with the Processing Fees would be deducted from any amounts paid in damages. Given this uncertainty in total damages, this recovery of 25% of best-case scenario damages is appropriate. As Plaintiffs state, it is within the range of recovery routinely approved by courts in this Circuit. *See, e.g., Teh Shou Kao v. CardConnect Corp.*, No. 16-CV-5707, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2021); *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 2:18-CV-1370, 2020 WL 3481458, at *17 (W.D. Pa. June 26, 2020); *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018); *McDonough v. Toys R Us, Inc.,* 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015); *Nichols v. SmithKline Beecham Corp.*, No. Civ. A. 00- 6222, 2005 WL 950616 at *16 (E.D. Pa. Apr. 22, 2005); *In re Ravisent Techs., Inc. Secs. Litig.*, No. Civ. A. 00-CV-1014, 2005 WL 906361 at * 9 (E.D. Pa. Apr. 18, 2005); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997).

Moreover, 25% of damages is within the range of the percentage of damages achieved in settlements of other similar cases arising from the assessment of Processing Fees. *See* ECF 77-1.

The Court has reviewed these benefits and has weighed them against the uncertainty and risk of continued litigation, as previously discussed. In balancing these matters, the Court finds that the proposed settlement falls well within the range of reasonableness and thus, meets the eighth

and ninth *Girsh* factors. *See Zanghi v. Freightcar Am., Inc.*, 2016 WL 223721, at *20 (W.D. Pa. Jan. 19, 2016) (*Girsh* factors eight and nine satisfied where settlement was reasonable in light of attendant risks of continued litigation, where plaintiffs' best possible outcome was not certain and many legal and factual questions could have prevented a full recovery); *Palamara v. King's Family Rests.*, 2008 WL 1818453, at *4 (W.D. Pa. Apr. 22, 2008) (although settlement relief was "a mere fraction of the potential recovery[,]" the settlement was reasonable in light of substantial risks of continued litigation); *Klingensmith*, 2007 WL 3118505, at *5 (settlement value must be weighed against significant costs and risks of litigation).

Thus, as the *Girsh* factors favor approval, the Court finds that the settlement is "fair, reasonable, and adequate" to protect the interests of all class members.

### 3. *Prudential* Considerations

The Third Circuit has also instructed that, where relevant, the following considerations ("*Prudential* considerations") should be taken into account along with the *Girsh* factors:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential*, 148 F.3d at 323. But "[u]nlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive[.]" *In re Baby Prods.*, 708 F.3d at 174. A reviewing court need only address those *Prudential* considerations that are relevant to the litigation in question. *In re Prudential*, 148 F.3d at 323-24.

The first *Prudential* consideration—the maturity of the substantive issues—advocates for the settlement. The Court has already determined that the parties conducted sufficient targeted discovery, understood the substantive issues, and appreciated the risks associated with continued litigation before engaging in settlement negotiations. This compels a finding that the settlement turned on a mature record.

The second and third *Prudential* considerations, which focus on the existence and probable outcomes of claims by other classes or other claimants, are not relevant in this litigation except as it may relate to the objections, which are discussed below.

The fourth *Prudential* consideration examines whether class or subclass members were given the right to opt out of the settlement. That was accomplished here because the notice sent to Settlement Class Members advised of their right to object or to be excluded from the settlement. This resulted in two objections, later withdrawn, and seven opt-outs.

The fifth *Prudential* consideration relates to the reasonableness of attorneys' fees. Plaintiffs' counsel fees and costs were disclosed in the notices sent to the settlement class members. The reasonableness of the requested fees is analyzed separately in connection with Plaintiffs' motion for attorneys' fees, and the Court has concluded that they are reasonable.

Finally, the sixth *Prudential* consideration focuses on the procedure for processing individual claims. Here, the entire claims handling process was handled by the Settlement Administrator, who submitted a detailed declaration about the process that was employed. This process was clear and transparent. The Court finds this procedure to be fair and reasonable.

Thus, the relevant *Prudential* considerations favor approval of the settlement.

4. *Baby Products* Consideration

Finally, in *In re Baby Products Antitrust Litigation*, the Third Circuit articulated another consideration for evaluating a settlement: "the degree of direct benefit provided to the class. 708 F.3d at 174. The Third Circuit explained:

> In making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards.

> *Id.*

Here, the Settlement Agreement establishes a $3.65 million fund from which class members would receive cash compensation on a pro rata basis based on the number of relevant fees assessed against an account during the Class Period. As a result, the Court finds that the degree of direct benefit provided to the class members points to approving the settlement.

In summary, having considered all of the relevant factors, the Court finds that final approval of the Settlement is warranted.

5. Objections

Notice was provided to over 537,742 settlement class members. In response, a total of 40,091 claim forms were submitted. Only two class members initially objected to the proposed settlement, and both later withdrew their objections. Thus, there are no objections to the proposed settlement.

**IV.    Conclusion**

For the reasons discussed, Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (ECF 77) will be granted.

An order will follow.

Dated: August 7, 2024                                      /s/Patricia L. Dodge
                                                           PATRICIA L. DODGE
                                                           United States Magistrate Judge