## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REBECCA NGUYEN, TAMICA
BREWSTER, KYLE STRICKENBERGER,
MICHELLE CAYNOR, *on behalf of*
*themselves and all others similarly situated*,

                Plaintiffs,

        v.

EDUCATIONAL COMPUTER SYSTEMS,
INC.,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:22-cv-1743

Magistrate Judge Patricia L. Dodge

### MEMORANDUM OPINION[1]

Plaintiffs have filed a Motion for Attorney Fees, Costs, and Service Awards for the named

Plaintiffs (ECF 69). They have fully articulated the basis for the requested relief in their supporting

memorandum (ECF 68). Defendant does not contest the relief sought. For the reasons that follow,

Plaintiffs' motion will be granted.

### I.    Attorneys' fees

Under Federal Rule of Civil Procedure 23(h), class counsel may apply to a court for an

award of attorneys' fees. Fed. R. Civ. P. 23(h). The Court of Appeals for the Third Circuit has

explained that "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase,

or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs

of [their] litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented
to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the
undersigned has the authority to decide dispositive motions and enter final judgment.

(3d Cir. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d 768, 820 n.39 (3d Cir. 1995)).

      As the Court of Appeals has explained:

> There are two primary methods for calculating attorneys' fees: the percentage-of-recovery method and the lodestar method. "The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" "The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation."

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) (quoting *In re Prudential*

*Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (footnotes

omitted)).

      Plaintiffs seek attorneys' fees in the amount of $1,216,666.67 based upon the percentage-

of-recovery method.

      A.  Percentage-of-Recovery Method

      In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 1990), the Third Circuit

directed that, when analyzing a fee award in a common fund case, a district court must consider

several factors, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 195 n.1.

      In *In re Prudential*, the Third Circuit identified three other factors that may be relevant and

important to consider: (1) the value of benefits accruing to class members attributable to the efforts

of class counsel rather than the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement. 148 F.3d at 336-40.

To assess whether this request is reasonable, the Court must consider the aforementioned *Gunter* and *Prudential* factors, "many of which are similar to the *Girsh* factors." *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).[2]

The first *Gunter/Prudential* factor is the size of the fund and the number of persons who will benefit.[3] As reported by Kroll LLC ("Kroll"), the Settlement Administrator, 40,091 claim forms have been submitted, reflecting that the implemented notice process was effective. Moreover, based upon the $3.65 million Settlement Fund, the settlement value is several multiples of the $1.2 million fee award that has been requested.

The second *Gunter/Prudential* factor requires an assessment of the presence or absence of substantial objections to the settlement terms and/or fee proposal by Settlement Class Members. As outlined in the Opinion approving the settlement, adequate notice of the proposed settlement and the process by which to submit objections was provided to over 537,742 Settlement Class Members. Only two objections were asserted, and both were withdrawn prior to the June 24, 2024 final approval hearing. Thus, this factor weighs in favor of approving the fee request. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) (reviewing the *Girsh* factors for settlement

---

[2] As addressed in the Opinion granting Plaintiffs' motion to approve the settlement (ECF 83), the Court has found that the proposed settlement satisfies all of the *Girsh* factors and is fair and reasonable.

[3] The Court previously analyzed the benefit and concluded that each Settlement Class Member will derive an economic benefit from the settlement. *See* ECF 83 at 20-21.

fairness and finding "the minimal number of objections and requests for exclusion are consistent with class settlements we have previously approved.").

The third *Gunter/Prudential* factor is the skill and efficiency of the attorneys involved. "The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011) (citations omitted). As discussed in the Court's Opinion which granted final approval of the settlement:

> The named Plaintiffs retained competent counsel who are experienced in the prosecution of class actions, deeply familiar with the legal and factual issues involved in this matter and highly qualified. Class counsel have litigated and settled numerous pay-to-pay cases arising from the assessment of Processing Fees. *See* Simplicio Decl. ¶¶ 25-29. Class counsel have demonstrated a high level of skill and competence in conducting the litigation to date and have invested a number of hours in pursuit of the claims of the class. These efforts have included, but are not limited to, investigating the claims prior to bringing suit and preparing complaints and other pleadings. Further, Plaintiffs' counsel engaged in lengthy and complex arms-length negotiations with ECSI with the able assistance of a mediator, which ultimately resulted in a settlement.

(ECF No. 83 at 10-11.) The significant level of counsel's experience, skill, diligence and competence positioned Plaintiffs to resolve this dispute on fair and reasonable terms while avoiding the uncertainty of continued litigation.

As noted in *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005), "[t]he quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." As the history of this class action conclusively demonstrates, the interests of ECSI were capably and skillfully represented by attorneys from Husch Blackwell, LLP. *See Lan v. Ludrof*, 2008 WL 763763, at *23 (W.D. Pa. Mar. 21, 2008) ("Plaintiffs' Counsel were

confronted with a formidable opposition throughout the course of these proceedings, and their substantial achievement for the Class is thereby all the more compelling"). Accordingly, the third *Gunter/Prudential* factor strongly supports the requested fee.

The fourth *Gunter/Prudential* factor requires consideration of the complexity and duration of the litigation. Class Counsel represents that prior to commencing litigation, they expended time and resources investigating the facts relating to ECSI's conduct and potential legal remedies and reviewed documents provided by potential plaintiffs. Counsel was able to fully evaluate the strengths and weaknesses of these claims. Armed with this information, which was achieved only after rigorous advocacy, the parties engaged in intensive settlement discussions facilitated by the Hon. Lawrence F. Stengel, ultimately culminating in the Settlement Agreement after a year of extensive negotiation. After thoroughly reviewing informal discovery produced by ECSI and analyzing relevant law, Class Counsel could fully understand the issues attendant to such litigation, value the risks of continued litigation, and resolve the case in a manner that achieves all goals of the litigation. Thus, the complexity and duration of this matter strongly supports approval of the fee request. *See Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 714 (W.D. Pa. 2015) (fees supported when "matter was initiated nearly 3 years ago and has involved several complex questions of law and fact").

The fifth *Gunter/Prudential* factor, "the risk of nonpayment" for hours expended, is significant in class action cases in which a contingent fee is involved. Class Counsel assumed a substantial risk in filing and litigating this matter, which involved the investment of a considerable amount of attorney time, effort and money, on a fully contingent basis with no guarantee of any recovery. (Simplicio Decl. ¶ 14) (Kauffman Decl. ¶ 10.) This weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012)

("Counsel took on the costs of litigation despite their lack of certainty that the Court would find that Defendants violated the FLSA, constant negotiations with Defendants regarding the Plaintiffs' recovery based on the number of hours worked, the potential for decertification of the class once conditionally certified, and risks in changes in the law and appeals.")

Thus, there was the real possibility that despite devoting significant attorney time and out of pocket costs to this litigation, Class Counsel would receive no compensation at all. *See, e.g.*, *Palamara v. Kings Family Rests.*, 2008 WL 1818453, at *5 (W.D. Pa. April 22, 2008) (given "obstacles to obtaining a favorable verdict . . . the risk that class counsel would not be compensated for their work has been real and substantial" which weighs in favor of approving the requested fee). Thus, the fifth factor weighs in favor of approving the requested fee.

The sixth factor examines the amount of time devoted to the case by counsel. This factor is established by Class Counsel's contemporaneously logged time and expense records. (Simplicio Decl. ¶ 25) (Kauffman Decl. ¶ 9.) The time and attention that Class Counsel devoted to this action was reasonable and necessary given the nature of the issues involved. Although a settlement was reached relatively early on in this litigation, as previously mentioned, Class Counsel engaged in extensive arm's-length negotiations for approximately one year before that settlement was finalized. Class Counsel spent significant time not only preparing this action for litigation but also ensuring that the Class Representatives and other class members received a positive result. Thus, this factor also supports an award of the requested fees. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *10 (W.D. Pa. Oct. 22, 2019); *Frederick v. Range Resources-Appalachia, LLC*, 2011 WL 1045665, at *12 (W.D. Pa. Mar. 17, 2011).

The seventh factor examines the fee awards in similar cases. The requested fee represents approximately one-third of the value of the monetary benefit in the Settlement. This is comparable

to the fee percentage awarded by this Court in other class actions. *See, e.g.*, *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 2020 U.S. Dist. LEXIS 249903, at *11 (W.D. Pa. Aug. 26, 2020) (approving attorneys' fee award of 33 1/3%); *Kapolka*, 2019 WL 5394751, at *9 (35% requested fee within "ballpark range"); *Jackson*, 136 F. Supp. 3d at 713 (awarding 25.6% of constructive common fund in attorneys' fees); *Hickton v. Enter. Rent-A-Car Co.*, 2013 WL 12138607 (W.D. Pa. Aug. 28, 2013) (approving attorneys' fee award of 33 1/3%); *Lan*, 2008 WL 763763, at *24 (25% of gross settlement fund is reasonably modest and well within range that courts have awarded in similar cases); *Erie County Retirees Ass'n v. County of Erie, Pa.*, 192 F. Supp. 2d 369, 383 (W.D. Pa. 2002) (granting fee request representing 38% of total fund). Additionally, Class Counsel represents that, in other pay-to-pay class settlements, court have awarded fees between 25-40%. *See* ECF 68-1. Based on this, the Court agrees that the fee award is comparable to fee awards in similar cases. Thus, this factor therefore supports approving the fee request.

The eighth factor asks whether the benefits are attributable to the efforts of Class Counsel, as opposed to the efforts of other groups. The Court agrees that the settlement was achieved through the advocacy of Class Counsel, not through the efforts of any other group or entity. As Plaintiffs note, there was no government investigation or inquiry by another group and Class Counsel alone initiated, investigated, and actively litigated this action. *See Lan*, 2008 WL 763763, at *25 (benefits achieved in settlement "attributable predominantly, if not exclusively, to the efforts of Class Counsel who initiated their own investigation and prosecuted this action against highly skilled defense counsel"); *Jackson*, 136 F. Supp. 3d at 715 (settlement "purely is the product of the effort of class counsel"); *Flores v. Express Services, Inc.*, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 29, 2017) ("Only class counsel, and no other group or agency, has performed work on behalf of the class").

The ninth *Gunter/Prudential* factor requires a comparison between the fee requested to a percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement. A typical private contingent fee is in the range of 33% to 40% of the recovery. Here, as previously discussed, the requested fee represents about one-third of the economic benefits that will be provided to Settlement Class Members. The requested fee is approximately 33.33% of the Settlement Fund. Although there is no consensus on how to determine a reasonable percentage if a private contingent fee had been negotiated, "several courts in this circuit have observed that fee awards under the percentage-of-recovery approach typically range from 19% to 45% of the settlement fund, with 25% being the median award." *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 341 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999). Thus, Plaintiffs' request is within the range of reasonable attorneys' fees.

Finally, the tenth *Gunter/Prudential* factor looks at "innovative" terms of the settlement. Upon review, the Court does not find that the proposed settlement contains any particularly innovative terms that warrant further analysis. As a result, this factor is neutral.

Thus, having reviewed Class Counsel's submissions and the *Gunter/Prudential* factors, the Court concludes that their request for fees is reasonable and should be awarded.

## II.    Expenses

In support of its motion, Class counsel have submitted declarations that it incurred a total of $10,403.04 in unreimbursed case-related expenses. (Simplicio Decl. ¶ 26) (Kauffman Decl. ¶ 10.) These expenses relate to filing, copying, mediation and case administration. *Id.* In addition, Kroll has billed $18,925.53 in services and fees incurred in the administration of this matter and anticipates billing an additional $176,225.50 to complete the administration.  (ECF 78-1 ¶ 20.)

These types of costs are appropriate for the prosecution of an action of this nature and are of the type customarily included and routinely charged to clients billed by the hour. The Court concludes that these expenses are reasonable, and counsel is entitled to reimbursement of these expenses. *See Abrams v. Lightolier Inc.*, 50 F.3d 1024, 122-25 (3d Cir. 1994).

For these reasons, Class Counsel shall receive costs in the amount of $10,403.04 and $176,255.50 for settlement administration costs.

## III.   Service Awards for the Named Plaintiffs

The Settlement Agreement provides that Rebecca Nguyen, Tamica Brewster, Kyle Strickenberger and Michelle Caynor (the "Class Representatives") may apply for service awards of $10,000.00 each. A service award is designed to reasonably compensate class representatives for their additional risk and inconvenience as named plaintiffs. *See, e.g.*, *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 2:18-mc-00798 ECF 313 ($15,000 service awards); *Copley v. Evolution Well Servs. Operating, LLC*, 2023 WL 1878581, at *4 (W.D. Pa. Feb. 10, 2023) ($10,000 service awards); *Kapolka*, 2019 WL 5394751, at *13 (awarding $5,000 service payments to named plaintiffs and noting that amount is consistent with "if not lower" than awards regularly provided in common fund cases, citing examples ranging from $2,500 to $12,500).

According to Class Counsel, Plaintiffs worked with counsel to provide information about their experiences and claims and incurred significant risk in bringing a substantial lawsuit against the company servicing their loans. Class Counsel represents that the Class Representatives "played an active role every step of the way, supporting Class Counsel, advocating for the relief sought by the Class Members, and they contributed significantly to the end result." (ECF 68 at 6.)

The Court finds that the amounts requested for the Class Representatives here are within the range of awards typically granted in similar matters and are appropriate given the risks they

undertook, the time invested in the case and their contributions to the results for the class.[4] Thus, the $10,000.00 service awards requested are reasonable and merit approval.

## IV.    Conclusion

For the reasons discussed, Plaintiffs' Motion for Attorney Fees, Costs, and Service Awards (ECF 69) will be granted.

An order will follow.

Dated: August 7,  2024                                                /s/Patricia L. Dodge
                                                                              PATRICIA L. DODGE
                                                                              United States Magistrate Judge

---

[4] As noted in Plaintiffs' memorandum, the total of $40,000 that would be collectively paid to the Class Representatives represents only about 1.1% of the total settlement fund.